CHRISTIAN, J.
This case is before us on appeal from a decree of the circuit court of Albemarle county. The foundation of the suit is a paper writing in the following words and figures, to-wit:
“Scottsville, Aug. 20, 1866.
“$1,805.76.
“On the 1st January, 1867, pay to Messrs. Mason, Martin & Co., eighteen hundred and five 76-100 dollars for value received, it being in full for the account of Daniel P. Lewis.
(Signed) “Geo. C. Gilmer,
“Agent for Dan. P. Lewis.
Addressed “To Jno. O. Lewis, Scottsville.”
This paper is endorsed across the face thereof: “Accepted.”
(Signed) “Jno. O. Lewis.”
On the 4th day of January, 1867, this writing was duly protested for non-payment by the acceptor, and notice of protest sent to George C. Gilmer, agent for Daniel P. Lewis, addressed to his proper post-office at Charlottesville.
In the year 1869 (Daniel P. Lewis having in the meantime departed this life), an action at law was instituted *against Daniel P. Lewis’ executor, on this writing, but upon demurrer was dismissed without prejudice to the right of any party interested to resort to a court of equity.
The present suit was brought by the executor of John S. Martin, who was a member of the late firm of Mason, Martin & Co., for the purpose of asserting the claim of the parties interested in said firm, to the sum^ of money due from the estate of Daniel P. Lewis, who it is claimed was responsible to said firm as drawer of the order or draft above referred to, and which was protested for non-payment by the acceptor.
The bill was dismissed by the circuit court, as to the executor of Daniel P. Lewis; and from this decree the plaintiff obtained an appeal from one of the judges of this court.
It does not appear in the decree of the circuit court upon what ground the plaintiff’s bill was dismissed. The defendant both demurred and answered, and much evidence was taken in the cause; that of the dc *228 fendant being taken for the purpose of showing that there was a parol agreement at the time the paper writing was executed; that the firm, of which the acceptor, John O. Lewis, was a member, would receive the order of Daniel P. Lewis, when accepted by the former, in payment of the debt of $1,805.76 due to the firm by the latter, and that he, Daniel P. Lewis, was not to be held in any way responsible for said debt, whether John O. Lewis, the acceptor, paid it or not.
It does not. however, appear from the record, whether the case was considered by the circuit court upon its merits, and dismissed for want of equity in the bill, or whether it was dismissed upon the demurrer for want of jurisdiction. But it was argued at the bar here, that the bill was properly dismissed, because the plaintiff had a full, complete and adequate remedy at law. I cannot *give my assent to this view. I think the case was plainly one for adjudication by a court of equity. It was a debt due to a partnership. Any recovery had, would have to be distributed among the partners or their representatives, or go to the payment first of the partnership debts. The rights and equities arising between the partners, and between them and their creditors, could be adjusted and enforced only in a court of equity. The firm of Mason, Martin & Co., was composed of James W. Mason, Thomas Staples, John S. Martin and John O. Lewis.
At the time of the institution of this suit, -Thomas Staples and John S. Martin were dead, and James W. Mason and John O. Lewis were bankrupts. It would have been Improper, and might have been impossible, to have joined the personal representatives Of the dead partners and the assignees of the bankrupt partners as plaintiffs, in an action at law. I think it is clear that the proper form of proceeding was that which was adopted of bringing all the parties interested before a • court of chancery, making them joint defendants with the executor of Daniel P. Lewis. The plaintiff, it seems, had once brought her action at law upon the paper writing referred to, and upon dejnurrer, this suit was dismissed, but without prejudice to her right to proceed to assert her claim in a court of equity. The record in that suit is not before us, but no doubt the very difficulty above suggested as to a joinder of parties was the ground of dismissal of that action. However that may be, I think the bill, upon its face, shows sufficient ground for the exercise of the jurisdiction of a court of equity, and that the plaintiff did not have a complete and adequate remedy at law, and that the demurrer, for want of jurisdiction, ought to have -been overruled.
We come now to the main and important questions in the cause. First, what is the nature and legal effect of the paper writing above referred to? and, second, can ♦the parol agreement alleged to have been made (if proved as alleged) at the time of the execution of that paper, vary or in anywise affect the legal rights and obligations which grow out of and are fixed by law in the terms of the written paper?
It must be conceded that the paper before us is a bill of exchange. It comes within the very terms of the definition of a bill of exchange. It is an unconditional written order or request addressed by one person to another, desiring him to pay a certain sum of money to a certain person or persons.
Of this bill of exchange Daniel P. Lewis (through his agent Gilmer) is the drawer, Mason, Martin & Co. are the payees, and John O. Lewis is the acceptor. It has all the constituent elements of a bill of exchange, and was treated as such by the holders and payees. It was presented for acceptance, and was duly accepted. It was presented for payment, and upon non-payment was duly protested, and notice of protest given to the drawer. The legal rights and liabilities attaching to such a paper are definitely fixed by law. It was the right of the payees to present it for acceptance and payment, and upon non-acceptance or non-payment to have the bill protested, and look to the drawer for payment. It was the undertaking and obligation of the drawer, if the bill was not accepted and paid by the acceptor, to make it good, upon due notice, to the payees. The legal import of the paper, by its very terms, was to fix these rights and liabilities upon the parties to this written contract. Now it is proposed, as matter of defence in a court of equity, by the executor of the drawer of this bill, that although the sum of money for which the bill was drawn was justly due and never paid, and although the bill was duly presented to the acceptor and protested for non-payment, of which due notice was given, that there is no liability fixed on the drawer because of a contemporaneous *parol agreement, which totally varies the terms and legal effect of the written instrument.
This parol agreement, it is attempted to show by the evidence of the defendant’s witnesses, Duke and Gilmer, the agent of Daniel P. Lewis, the drawer of the bill of exchange, and who signed said bill, and who is the executor of Daniel P. Lewis. I extráct from the record Gilmer’s evidence, which was at the time excepted to, and which is as follows. He says:
“Soon after the surrender of General Lee, Mr. John S. Martin, of the firm of Mason, Martin & Co., came to my house to see myself and Mr. Daniel P. Lewis about the settlement of our accounts with the said firm, and proposed to take my individual note for the amount, I think upon five years’ time, which, owing to the condition of the country, 'I positively refused, but proposed to settle those old accounts out of any debts due Mr. Daniel P. Lewis, provided that settlement was final so far as Mr. Lewis and myself were concerned, and lie might select from the debts due Mr. Lewis, and I would give an accepted order for the full amount, which should «relieve Mr. Lewis and myself from any further obligations, as I was unwilling to renew old debts with any new *229 obligations then. He looked over the accounts and selected Mr. John O. Lewis’; I agree to give it as soon as he would get Mr. John O. Lewis to agree to accept; for some year or more, I won’t be positive, I think it was, he got Mr. John O. Lewis to agree to accept it; I at once wrote to Mr. John O. Lewis to know if he agreed to accept it, and he wrote he did; I then got Mr. William J. Duke to go with me down to settle with Mr. Martin; they took the papers, made settlement, I not being present; Mr. William Duke then called me to them, saying they had made the settlement, and Mr. John S. Martin then handed me the paper which he had drawn for me to sign, which I thought might hold Mr. Lewis or myself *responsible, and I refused to sign it; that I would sign no paper that would hold myself or Mr. Lewis responsible, was our agreement; he then asked Mr. Duke to draw such a paper as would suit our agreement, and not hold Mr. Lewis or myself responsible: I then signed the paper which Mr. Duke drew, and took it to Mr. John O. Lewis, who accepted and then gave it to Mr. Martin, who took it and expressed himself as fully satisfied with it, and saying that we were no further bound for it.”
This testimony of Gilmer is confirmed substantially, if not literally, by the witness Duke.
Now, it is, to say the least, doubtful whether Gilmer and Duke are competent witnesses under the statute. They on one side and Martin on the other were the sole actors in this transaction; i. e., the agreement which they attempt to prove. Marlin is dead. It might well be said that in a certain sense this parol agreement is “the transaction under investigation,” and that Martin was a party to it. It might well be questioned whether both Gilmer and Duke do not come within the exceptions of the statute, and whether they ought not to be rejected as incompetent witnesses. But suppose they are competent witnesses, and accepting as proved the facts which they state, the question is: Is such evidence of a contemporaneous parol agreement admissible to contradict or vary that which is contained in a written instrument? The parol agreement attempted to be set up in this case wholly contradicts and totally varies the terms, legal import and effect of the writing between the parties. In the one the drawer binds himself to pay in the event that the acceptors does, not pay. By the terms of the parol agreement as proved, neither the drawer nor his agent was to be held responsible in any event.
I think it is clear that such evidence is wholly inadmissible. *The general principle that evidence of a contemporaneous parol agreement is not admissible to vary or contradict a written instrument, is too familiar and well established to require any citation of authority. It is a principle which has now become one of the axioms of jurisprudence, and is of the last importance in the administration of justice. Without this general principle there would be no certainty in written agreements, and no security in the most formal contracts and the most specific transactions among men. It ought not to be weakened or frittered away by nice distinctions and ingenious exceptions, to meet hardships, real or supposed, of particular cases. Where the parties have reduced their agreement to writing, that agreement cannot be overthrown by evidence of a parol agreement proved by interested witnesses, or dependent for its establishment upon the slippery memory of men; especially cannot it be done, as in this case it is attempted to be done, by the statement of parties to one side of a transaction, when the lips of the other party to that same transaction are sealed in death.
Now, the rule of exclusion of a parol agreement, above stated, applies as well to a written instrument, whose legal import is clear and definite (as to the rights and liabilities of the parties thereto), as to one where specific stipulations are fully written out. Between such instruments, distinctions which the courts have sometimes attempted to make, are not based on any just ground in principle. As was well said by Judge Joynes, in his able and exhaustive opinion in the case of Woodward, Baldwin & Co. v. Foster, reported in 18 Gratt. 200, 205: “When the legal import of a contract is clear and definite, the intention of the parties is, for all substantial purposes, as distinctly and as fully expressed as if they had written out in words what the law implies. It is immaterial how little or how much is expressed in words *if the law attaches to what is expressed a clear and definite import. Though the writing consists of only a signature, as in the case of an endorsement in blank, yet where the law attaches to it a clear, unequivocal and definite import, the contract imported by it can no more be varied or contradicted by evidence of a contemporaneous parol agreement than if the whole contract had been wholly written out in words. The mischiefs of admitting parol evidence would be the same in such cases as if the terms implied by law had been expressed.”
This rule, while applicable to all cases of written instruments, applies .especially to mercantile instruments. In Bank of United States v. Dunn, 6 Peters R. 51, Mr. Justice McLean, delivering the opinion of the court, said: “The liability of a party to a bill of exchange or promissory note has been fixed on certain principles which are essential to the credit and circulation of such paper. These principles originated in the convenience of commercial transactions, and cannot now be departed from.”
The principles thus stated have been recognized by the whole current of authorities, English and American. Only one case is cited by the learned counsel for the appellee in support of the proposition that the parol agreement, as stated by Gilmer, can be set up against a written paper, and relied on by him as a case exactly in point, and that is the case of Pike v. Street, reported in 1 Mood. & Malk. 226 (22 Eng. C. L. 299). It *230 is sufficient to remark that the authority of that case is to a certain extent questioned in Foster v. Jolly, 1 Cromp. Mees. & Ros. 703, and seriously questioned by Judge Joynes in Woodward, Baldwin & Co. v. Foster (supra), and is reported by Mr. Bigelow in his volume of Overruled Cases. Whether expressly overruled or not, it is contrary to the unbroken current of authority both in ^England and in this country. See cases cited by Judge Joynes in case cited (supra); also, Brown v. Wiley. 20 How. U. S. R. 442; Specht v. Howard, 16 Wall. U. S. R. 564; Forsythe v. Kimbal, 1 Otto U. S. R. 291; Brown v. Spofford, 5 Otto U. S. R. 474; Cassidy v. Metcalf, The Reporter, Aug. No. 1878, p. 274.
The appellee, however, in avoidance of this general rule, now so universally recognized by the courts, seeks to shelter himself under that exception to the general rule which confers upon courts of equity the power to reform or rescind a written contract made under a mistake.
In this case, if there was any mistake shown, it was a mistake of law, and not of fact. I think it may be affirmed, upon the authorities, that mistakes of law, unless accompanied with fraud, misrepresentation, concealment, surprise or some similar peculiarity of circumstances, furnish no ground of equity jurisdiction. The elementary maxim ignorantia legis neminem excusat prevails in the administration of civil as well as criminal law, and is as potent in a court of chancery as in a common law court. I do not deem it necessary here to enter upon any elaborate discussion of the distinctions made by the courts between mistakes of fact and mistakes of law; nor to undertake the difficult, if not impossible, task of reconciling the numerous adjudged cases on this subject It is sufficient to refer to the opinion of Judge Staples in Zollman v. Moore, 21 Gratt. 313, the able review of this doctrine, and many adjudged cases by Judge Story, in the fifth chapter of his work on Equity Jurisprudence, and the notes to the leading case of Woollam v. Hearn, reported in White & Tudor’s Leading Cases in Equity, pp. 920, 980, et seq., where all the cases are collected, and to deduce from them the principles which must govern courts of chancery in the exercise of their powers in this branch of equity jurisprudence. *From this review of the authorities, it may be at least safely affirmed that the province of courts of chancery to correct mistakes of law is rarely exercised, and will not be exercised, unless the mistake is established beyond all reasonable doubt. The burden of proof is always on the party setting up the parol agreement, who must rebut the presumption that the writing speaks the final agreement, by the clearest and most satisfactory evidence. As was well said by Black, C. J., in Light v. Light, 9 Harris’ R. 407: “If contracts were binding only on those who knew what construction the courts would put upon them, very few would stand. No system of jurisprudence could bead-ministered for a year on this principle without falling to pieces. All codes have therefore adopted the maxim ignorantia legis neminem excusat. _ It is therefore a general, though not invincible rule, that in the absence of fraud and undue influence, one who executes an instrument with an opportunity of knowing what it contains, cannot rely on ail alleged misapprehension of its legal effect as a ground of equitable relief.”
In the notes to the leading case of Woollam v. Hearn, 2 Lead. Cases in Equity (supra), the learned annotators, after a most elaborate review of the numerous adjudged cases on this question, declare that “the reformation of a writing on the 'ground of a mistake in law is a transcendent exercise of judicial power requiring the utmost care and deliberation. The party asks that he may not be bound by words which he has made his own, by putting his hand to the instrument. He must, therefore, show how he came to adopt language which did not express his meaning. As between two parties, one of whom maintains that a writing which they executed conveys their intention, while the other contends that it does not, the burden of proof is obviously on the latter. The explanation should be so reasonable, probable and natural, as to satisfy the mind of the existence of the mistake, and-that *it can be rectified without injustice. It has been truly said that one who alleges that he understood that a note payable on demand, or in a year from date, was to be renewed indefinitely, or delivered up unpaid at the death of the promisee, ought not to be believed on any amount of testimony.
“Courts of equity do not sit for the protection of men who, having the full possession of their faculties, deliberately express themselves in language which does not convey their meaning.”
In a very recent case decided last year by the supreme court of the United States, and reported in 5 Otto 480, Brown v. Spofford, and which is a case exactly in point, Mr. Justice Clifford, speaking for the whole court, said: “Where a bill of exchange was drawn in the usual form and was protested for non-payment, the court held twenty years ago that parol evidence of an understanding between the drawer and the party in whose favor the bill was drawn, was inadmissible to vary the terms of the instrument. * * * Certain fixed principles govern the liability of parties to a bill of exchange or promissory note, which are essential to the credit and circulation of such paper. * * * Decided cases of the most authoritative character have determined that parol evidence of an oral agreement alleged to have been made-at the time of drawing, making or endorsement of a bill or note cannot be admitted to vary, qualify, contradict, or add to or subtract from the absolute terms of the written contract.”
Upon principle and authority, therefore, I am clearly of opinion that the evidence appearing in the record, tending to prove the alleged parol agreement in this case, is plainly inadmissible, that it ought to have been discarded by the court, and the estate of Daniel *231 P. Lewis, the drawer, ought to have been held liable for the sum *of money for which the bill of exchange was drawn by him.
But there is still another ground upon which this evidence should have been excluded from any consideration by the court in this case. At the time of the alleged parol agreement the partnership of Mason, Martin & Co. had been dissolved. The debt due to the firm by Daniel P. Lewis had been set apart with other debts to meet the outstanding obligations of the firm. The claim here asserted under this parol agreement is asserted in a court of equity. It is not pretended that a dollar of this debt has been paid. It is a just debt, for which the defendant’s testator received full consideration. He asserts this claim under a parol agreement with Martin, one of the firm, which if carried out would be a palpable fraud on the other members, and the creditors of the firm. Tt was an arrangement, if carried out, which, without the consent of the other members of the firm, and in fraud of the rights of creditors, would be an attempt to satisfy a good debt due from a solvent party by an unpaid and protested order upon a man then failing, if not insolvent, and now a declared bankrupt. As was said in Harris v. Harris’ ex’or, 23 Gratt. 737, 746, we cannot allow a de- . fendant to be heard in a court of equity to say that his own act is to be avoided by his own fraud. By a stern but proper policy of the law, the party who alleges his participation in a fraud is excluded from the proof which would show it. See Harris v. Harris’ ex’or, 33 Gratt. 737, and cases there cited.
Upon the whole, I am of opinion that the decree of the circuit court dismissing the plaintiff’s bill was erroneous, and must be reversed.
MONCURE, P„ and BURKS, J., concurred in the opinion of CHRISTIAN, J.
*The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the argument of counsel, is of opinion, for reasons stated in' writing and filed with the record, that the decree of the said circuit court dismissing the appellant's bills, original and amended, as to the executor of Daniel P. Lewis, was erroneous. It is therefore decreed and ordered that the said decree be to this extent reversed and annulled, and that the appellant recover of the appellee, George C. Gilmer, executor of Daniel P. Lewis, deceased, out of any assets of the estate of his testator in his hands to be administered, her costs by her expended in the prosecution of her appeal and writ of supersedeas here.
And this court now proceeding to render such decree as the said circuit court ought to have rendered, it is ordered and decreed that the appellee. George C. Gilmer, executor of Daniel P. Lewis, deceased, pay, out of any assets in his hands to be administered, to the appellant, Martha Ann Martin, executrix of John S. Martin, deceased, the sum of one thousand eight hundred and five dollars and seventy-five cents ($1,805.75), with lawful interest thereon from the 1st day of January, 1867, till paid, together with her costs by her expended in said circuit court up to the rendition of said decree of the 33d day of May, 1873.
Decree reversed.