## MARY A. McCRACKEN v. R. R. GUMBERT ET AL.

### APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 29, 1889—Decided January 6, 1890.

[To be reported.]

(a) An owner of land sold the coal under it, excepting the red crop coal, and granted to the vendee the right of way for railways at crossings of ravines, and also the right to run coal from other lands through the entries made and used in taking out the coal so sold. The topography of said land was such that the coal in an adjoining tract could be brought to the entries referred to only by means of a railway, crossing a ravine

and passing into an opening made through the outcrop at the rear of the vendor's land.

1. It is presumable, from the terms of the contract of sale, that the parties knew it would be necessary to construct such an opening and railway, and that the construction thereof was in their contemplation at the time the grant was made; it was therefore the duty of the court to so construe the grant as to give it effect, by holding that the right thus to bring other coal to the entries made in taking out the coal so sold, was authorized, as a necessary incident, by the grant of the right to transport it through those entries.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-IAMS, McCOLLUM and MITCHELL, JJ.

No. 62 October Term 1889, Sup. Ct.; court below, No. 79 January Term 1888, C. P. No. 2.

On October 18, 1887, Mary Ann McCracken brought trespass against R. R. Gumbert and William Huey, partners as Gumbert & Huey, to recover damages for the alleged breaking and entering of the plaintiff's close by the defendants, and, in connection therewith, the digging of holes and trenches and the building up of piles of earth, stones, logs, etc., thereon. The defendants pleaded not guilty.

At the trial on October 10, 1888, the following facts were shown:

On June 30, 1859, Alexander McClure, being the owner of a tract of land lying on the Monongahela river in Elizabeth township, Allegheny county, containing 244½ acres, entered into a written contract by which he sold and agreed to convey to Thomas Farrow, John Gumbert and William Huey, in fee simple, all the coal under said land, excepting, inter alia, "the soft red coal at the out-crop of the coal in said entire premises." In addition to the coal itself, the contract specified certain rights and privileges as embraced in the sale, in the following language: "Together with all the necessary rights and privileges of mining and taking away the same by the use of entries, drifts and courses for air and drainage, and air holes, pit-mouths, places for the deposit of slack and slate, and right of way for railroads over surface at the crossing of ravines, but no right for hauling over the surface of the inclosed land with teams or otherwise, than when necessary in crossing a ravine with pit cars in the usual way; and the said McClure also

grants the privilege of forever hereafter running other coal from other lands through the entries and railways made and used in taking out the coal herein above granted."

McClure having died, his administrator on January 17, 1866, executed and delivered to the vendees, in pursuance of a decree of the Orphans' Court of said county, a deed conveying to them the coal, rights and privileges as the same were specified in said contract. The title conveyed by said deed afterwards became vested in the defendants.

A part of the surface above said coal containing about eighteen acres became vested, at some time subsequent to the sale of the coal by McClure, in the plaintiff's husband, and, at his death, some years prior to the bringing of the action, a life estate in these eighteen acres passed under his will to the plaintiff. The plaintiff's land lay along the rear edge of the McClure tract, back from the river, and was bounded on the side away from the remainder of the McClure land by a tract belonging to one Pierce. The boundary line between the Pierce and McClure tracts ran along the bottom of a ravine, which lay about fifteen feet below the level of the coal seam. The Pierce tract was underlaid with the same seam of coal, starting on the opposite side of the ravine and at the same level above its bottom. At one point, on another part of the McClure tract than that owned by the plaintiff, the McClure and Pierce coals came together, without any break in the continuity of the stratum.

The defendants, working backward from the river, had exhausted all the coal under the McClure land, except a small block lying next to the Pierce line, at a point where the coal on the two properties came together. Having then purchased the Pierce coal, they made an opening from their workings under the McClure land out through the crop coal to the side of the ravine, built a railroad across the ravine to a pit-mouth which they opened in the face of the Pierce coal, and proceeded to transport coal mined on the Pierce tract across the ravine by means of this railroad, and so into their entries on the McClure tract and through them to the river.

Testimony for the defendants tended to prove that the block of coal left standing on the McClure tract might have been taken out at one time through the McClure workings, but that, at the time the railroad was built across the ravine, it could be

Charge of Court below.

gotten out only through the Pierce coal and by means of the railroad; also that at no time after the purchase of the Pierce coal by the defendants was there any practicable way of taking it out through the McClure land, otherwise than by means of the railroad constructed by them.

In constructing their opening on the McClure side of the ravine, the defendants necessarily removed a considerable quantity of soft red coal from the outcrop on the land of the plaintiff, which, however, they were not shown to have made any use of, and their testimony was to the effect that it was stored in old workings under the plaintiff's land. They destroyed a part of a crop of oats in constructing the railroad from this opening across the ravine.

At the close of the testimony the court, MAGEE, J., charged the jury in part as follows:

The damages claimed by the plaintiff consist of three items. (1) Damage done to her by the destruction of a crop of oats. (2) In the interference with the use and enjoyment of a certain portion of her land. (3) The value of a certain quantity of soft red coal taken and used by the defendants in the construction of the fill and railroad complained of.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

Now, under the view I take of the case, it does not matter whether the tenant for life is old or young, whether she will live one year or ten years, but it bears upon the deprivation that has taken place from the time the entry was made and the railroad constructed, until the time of the bringing of this suit; because that is damage she can recover. If they go on interfering with her rights she can bring another action and in the end restrain them from so doing. . . . . .

The only remaining item is for the taking of the soft red coal in opening the entry. There is no dispute as to the fact that the red coal was taken, nor is there any particular difference as to the amount taken; there may have been some little difference in the testimony as to whether it was all that character of coal to which the defendants had no right, admittedly no right, under their grant from McClure. The grant made by McClure to the defendants, or their predecessors, did not confer soft red coal.

Now I think I have sufficiently referred to the evidence, and I have done so in order to enable you to estimate in a proper way the amount of damage done to the plaintiff, if it becomes necessary that you should determine that matter. And that depends upon a question of law.

[The defendants say that the plaintiff cannot recover in this action for the reason that they had a conveyance of the coal from Mr. McClure, who at one time owned the land involved in this controversy, as well as other surrounding lands, which after granting 244½ acres of coal, with the right to mine the the same, and make entries and so on, contained this additional provision : " And the said McClure also grants the privilege of forever hereafter running other coal from other lands through the entries and railways made and used in taking out the coal hereinbefore granted." The defendants claim that by virtue of this provision in their original grant, in law they are permitted to make this entry, which, it is claimed, occasioned the damage for which this suit is brought ; that under this privilege they had a right to construct this entry ; and, therefore, in exercising the right conferred, they are not responsible in law for damage resulting from a careful and proper exercise of that right. There is no evidence here to show that it was not done in a careful and proper way ; and they say, therefore, that the plaintiff cannot recover. Now, that is a question of law submitted to the court as to the construction of the terms of an agreement. As a matter of law I say to you that the privilege conferred by the clause I have just recited does not warrant the making and using of new entries and railways for the mere purpose of running coal from other land. But it confers the privilege forever of making and using, in the running of coal from other lands, such entries and railways as have been made and used in taking out the coal in the tract granted. If, therefore, you find from the evidence that the entry and railway in question—that is, the things he has a right to use in connection with mining and running coal from other tracts —were not made and used in taking out the coal granted in the deed, the defendants cannot justify their act as lawful under the privilege conferred by the deed and the agreement mentioned.] [1]

Now, I do not mean to say that it did not confer the right

Charge of Court below.

to make an entry; the grant itself gave them the coal under 244½ acres of land (soft red coal I should say excepted), "together with all the necessary rights and privileges of mining and taking away the same," that is the black coal. How? "By the use of entries, drifts and courses for air and drainage and air holes, pit-mouths, places for the deposit of slack and slate, and right of way for railroads over surface at the crossing of ravines," etc. That is what they had a right to do; to make railways, to make entries, to cross ravines. For what? For the purpose of taking out the black coal. And he also covenants and agrees that after they have done that, that anything reasonably and properly necessary in connection with mining the black coal under the tract, any reasonable and legal exercise of the privileges of the grant, could be done afterwards; but it does not authorize the construction of entries over and under the surface of the property, for the mere purpose of getting at other coal. I take it, that is not the meaning of the grant. It gave authority to the defendants to do what was necessary for the mining and taking away of the coal conveyed; and if you find that this entry and railroad were legally, properly and legitimately made for the purpose of mining the coal conveyed to the defendants, then they can be used by them for the running of other coal, because those are two things he can use under that privilege; and if you find the fact to be that they were made for the purpose of mining the coal granted by the deed from McClure, then the defendants have a right to use them and the plaintiff could not recover. That, then, is the question to be determined in order that you shall apply the law. It either relieves the defendants from liability or makes them responsible for the trespass, accordingly as you find the fact to be in reference to the object and purpose for which the entry was constructed.

I omitted in speaking of the right of the plaintiff to recover for the red coal, an additional defence set up by the defendants, that it was not a subject of damage for which the plaintiff, who is a tenant for life, could recover; that she did not have any right to the coal, and therefore the damage was not to her, but was a damage to the tenant in fee. That is one of the claims, as I understand it, on the part of the defendants, in regard to the right of the plaintiff to recover for the red coal.

Now, as carrying out the views I have expressed in my general charge, I will read and answer the points presented by the parties, and they are affirmed, as I understand them, carrying out and supporting the views which I have expressed to you more at length on matters of law.

The plaintiff asks me to charge:

1. That upon all the evidence in the cause the verdict should be for the plaintiff.

Answer: This point is refused.

2. That unless the entry, fill and railway, complained of by the plaintiff, were made in good faith for the purpose of taking out the coal on the McClure land, the act of the defendants in making them was a trespass; and, unless they were also used in taking out said coal, the use thereof for taking out the Pierce coal was a further trespass.

Answer: This point is affirmed. I have indicated in my general charge more at length the effect of this point as matter of law, and the construction of the right of the defendants under their deed.[3]

The defendants ask the court to charge the jury:

1. That under all the evidence the verdict should be for the defendants.

Answer: This point is refused.[2]

The jury rendered a verdict in favor of the plaintiff for $146. On January 10, 1889, a motion for a new trial was overruled by the court, without opinion, "the plaintiff, by writing filed, having remitted the sum of $61 of the verdict of the jury, being the item found by the jury as the damages sustained from the taking of the red coal," and judgment was entered on the verdict as thus reduced. Thereupon the defendants took this appeal, assigning for error:

1. The part of the charge embraced in [ ][1]

2. The answer to defendant's point.[2]

3. The answer to plaintiff's point.[3]

*Mr. M. A. Woodward*, for the appellant:

1. Under the grant made by McClure we have a right to reach the Pierce coal. Leaving out of view for the present the remaining block of the McClure coal, which can be reached only

by means of the way we have constructed into the Pierce coal, the grant we are now claiming under is made wholly abortive by the strictness of literal construction given to it by the court below. That construction is against the evident intent of the parties to the grant, as manifested by the circumstances and relations of the property respecting which they negotiated: Lacy v. Green, 84 Pa. 518; Lewis v. Baird, 3 McL. 56; Salisbury v. Andrews, 19 Pick. 250.

2. The grant of a right to do a certain thing is to be construed as including all the incidental rights requisite to make the grant effectual: 3 Washb. on Real Prop., 385, 387, 394, 397; Bell v. Woodward, 46 N. H. 337; Prescott v. White, 21 Pick. 343; Dand v. Kingscote, 6 M. & W. 174; Perkins v. Dickinson, 3 Gratt. 365; Hays v. Kershaw, 1 Sandf. 258. It is enough to add that, if we had the right to construct the way to reach the remaining McClure coal through the Pierce land, the fact that that object is only incidental and but a part of our purpose and that we have not yet run any but the Pierce coal over it, does not affect our right; it matters not to the plaintiff in what order we proceed, and the right to use the way for the Pierce coal is given by the letter of the grant.

*Mr. John G. Bryant,* for the appellee:

1. In mining the McClure coal the defendants could have so located their entries and railways as to lead to the line of the Pierce coal. Any necessity to extend them across intervening land did not exist at the date of the grant, but has arisen since, from the acts of the defendants themselves. The right of way from necessity over the land of another is always of strict necessity, which must not be created by the claimant of the right: McDonald v. Lindall, 3 R. 492. Nor can the implication of such a right arise from convenience merely: Howell v. McCoy, 3 R. 256.

2. It does not appear that without the right claimed by the defendants, the grant of a right to run other coal through the McClure workings would be of no effect, merely because what they have done was necessary for the Pierce coal. The thing to which a right is appurtenant must be more worthy than the appurtenance: 3 Washb. on Real Prop., *626. The appendage

here claimed is the right to make and use new entries and railways, which is more worthy than the grant to which it is claimed to be appendant, viz., a right simply to use old entries and railways.

OPINION, MR. JUSTICE WILLIAMS:

This case depends on the construction of the grant of Alexander McClure to Farrow, Gumbert & Co. McClure was the owner of a farm containing 244½ acres, and, by contract made on June 30, 1859, sold all the coal under said farm to Farrow, Gumbert and Huey, reserving the red coal at the outcrop and six acres of the black coal for the support of the farm buildings and for domestic purposes. With the coal, he conveyed, in express terms, all the rights and privileges of mining, with the right to make drifts, air-holes, and pit-mouths for ventilation and drainage, and the "right of way for railroads over the surface at the crossing of ravines;" also, the privilege of "forever hereafter running their coal from other lands through the entries and railways made and used in taking out the coal above granted." The outcrop of the coal on the McClure farm, when mining began, was on the face of the ridge fronting the Monongahela river. The seam or vein of coal extended back from the river, under the broken upland, through other tracts in the rear of the McClure farm, one of these being the Pierce tract, the coal under which is also owned by the appellants. The line between the McClure and the Pierce tracts runs along and near the bottom of a deep ravine,—so deep that it cuts through the vein of coal, leaving the outcrop on each side some fifteen feet above the bottom of the ravine. Having substantially exhausted the coal under the McClure, the appellants made an opening through the outcrop to the surface, built a road over the surface across the ravine to the outcrop on the Pierce, and commenced to mine their coal under the Pierce, and to run it "through the entries and railways made and used in taking out the coal" from the McClure, to the means of shipment on the river side of the ridge. The opening from the entry under the McClure through the outcrop to the surface, and the road across the ravine to the outcrop on the Pierce, constitute the trespass complained of.

On the trial in the court below, the learned judge held that,

unless this opening out to the surface, and the road over the ravine, were used in getting the coal out from under the Mc-Clure, "the defendants cannot justify their act as lawful under the privilege conferred by the deed and the agreement mentioned." As there was no pretence that the opening and road across the ravine had been so used, or were built for any such purpose, this was a direction to find for the plaintiff, and is made the basis of the first assignment of error. If we turn to the agreement of June 30, 1859, it is very clear that both McClure and his vendees knew that the vein of coal that extended through his own land continued beyond it through other lands lying behind his own and that must be reached by means of the entries and railroads to be made in taking the coal out of his lands. It is a reasonable presumption that they knew that the line between his land and the tract immediately behind it was in a ravine deep enough to cut through the coal, and that it could be transported through the entries under his land only after connecting such entries with the coal on the other side of the ravine by means of a surface road crossing from outcrop to outcrop. With such knowledge of the actual situation on the ground, McClure expressly granted the right of way over ravines, and the privilege of "forever hereafter running other coal from other lands through the entries and railways made and used in taking out the coal hereinabove granted."

The construction which the court below put upon this grant wholly defeats it. The ravine was between the McClure and the Pierce tracts, and there could not be continuous mining under the McClure up to the line of the Pierce. The grant is therefore inoperative, according to the construction that prevailed at the trial, because the process of mining under the McClure did not carry the entries and railways up to the line of the Pierce. But the grant is of the right of "running other coal from other lands through the entries and railways made and used in taking out the coal hereinabove granted." The "other coal from other lands" must first be brought to the entries and railways under the McClure, and then it may be transported over them. It can only be brought to them by means of a connection through the outcrop and over the ravine. This was a fact known at the time the contract was made, and therefore within the contemplation of the parties when the grant was

incorporated into it. It is the duty of the court to give such a construction to this grant as shall give it effect. To do this, we must hold that the right to bring the coal from other land to the entries and railways under the McClure is necessarily incident to the right to transport it over them, and that in opening a way from the side entry to the surface, and over the ravine to the Pierce, the appellants were not trespassers, but were in the exercise of a clear legal right, under the terms of the grant. This is conclusive of the case as now presented. There is no proof of the conversion by the appellant of any part of the red ·coal; and the discussion of the appellee's interest therein, as a tenant for life of the surface, becomes unnecessary.

Judgment reversed.