# Richmond.

CITIZENS NATIONAL BANK v. WALTON.

NOVEMBER 17, 1898.

Absent, Cardwell and Riely, JJ.

1. EVIDENCE—*Endorsement of Negotiable Note.*—An endorsement by one of two payees of a negotiable note to the other by which the endorser "assigns and transfers" to such other "all right, title, and interest" in the note is equivalent to a blank endorsement of the note, carrying with it the consequences of an endorsement without restriction or limitation, and cannot be varied or contradicted by evidence of any contemporaneous parol agreement between the parties.

2. NEW TRIALS—*Decision by Trial Court without a Jury.*—It is unnecessary to make a motion for a new trial in the trial court in order to have the judgment reviewed in this court, where the whole matter of law and fact is submitted to and determined by the trial court without the intervention of a jury.

Error to a judgment of the Circuit Court of Page county rendered February 15, 1898, in a proceeding by motion for a judgment wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*Sipe & Harris,* and *Francis L. Smith,* for the plaintiff in error.

*Barton & Boyd,* and *Walton & Walton,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

L. H. Baldwin, on October 15, 1890, made and signed the following note:

"$1,333.33.                    ROANOKE, VA., Oct. 15, 1890.

Two years after date, for value received, I promise to pay to Wm. M. Fielding and S. A. Walton, or order, without offset, the sum of thirteen hundred and thirty-three 33-100 dollars, with interest from date, at the rate of six *per cent. per annum,* negotiable and payable at the Commercial Bank of Roanoke, at Roanoke, Virginia. ' Homestead and all other exemptions waived by the maker and each endorser of this note.

(Signed)   L. H. BALDWIN."

This note is endorsed as follows:

"For value. received, I hereby assign and transfer unto W. M. Fielding all right, title, and interest that I may have in the within note.

Witness my hand, this 29th day of December, 1890.

S. A. WALTON.

(Signed)   W. M. FIELDING."

The plaintiff in error, the Citizens National Bank of Alexandria, became the owner of this note for value in due course of business, and, not being paid at maturity, it was protested, and notice thereof given to the endorsers, Walton and Fielding. The bank, in July, 1897, instituted suit on said note against S. A. Walton, who presented two grounds of defence: First, that he was not liable as endorser on said note, and did not endorse it; second, that he was not liable as assignor on the note, because the bank did not. use due diligence to make the money out of the drawer thereof, or out of the person to whom the defendant assigned the same.

The court rendered judgment for the defendant, and the bank having, during the progress of the trial, taken two bills of exceptions, the cause is now before us upon a writ of error.

The defendant Walton offered himself as a witness in his

own behalf, and he was permitted to testify, notwithstanding the objection interposed by the bank, and this ruling of the court constitutes the subject-matter of the first bill of exceptions.

Walton's testimony is as follows: " Mr. Fielding and myself made sale of our property, which was real estate held jointly, at Roanoke, Va., in October, 1890. The cash payment was divided equally between us. The purchaser (Mr. Baldwin) executed six notes to us for the sum of $1,333.33 each, for the deferred payments, and these notes were also equally divided between us. I assigned and transferred all right, title, and interest that I had in the three notes which Mr. Fielding got to him, as appears on the back of the note sued on. Mr. Fielding made identically the same assignment and transfer of his interest in the notes which I got to me. Subsequently, Mr. Fielding had the plaintiff to discount the note sued upon for himself, and received the proceeds. I had nothing whatsoever to do with that transaction, nor did I receive any of the proceeds thereof. I have never heard of any legal proceedings being instituted against the maker (Baldwin) of the note, nor against Mr. Fielding, by the plaintiff in this suit."

This testimony was improperly admitted. The legal import of the endorsement of the note in question was to transfer it to the plaintiff, and the endorsers thereby assumed the ordinary liability of endorsers of such bills.

As was said in *Woodward, Baldwin & Co.* v. *Foster*, 18 Gratt., at page 205: " When the legal import of a contract is clear and definite the intention of the parties is, for all substantial purposes, as distinctly and as fully expressed as if they had written out in words what the law implies. It is immaterial how much or how little is expressed in words if the law attaches to what is expressed a clear and definite import. Though the writing consists only of a signature, as in the case of an endorsement in blank, yet, where the law attaches to it a clear, unequivocal, and definite import, the contract imported by it can no more be varied or contradicted by evidence of a contem-

poraneous parol agreement than if the whole contract had been fully written out in words. The mischiefs of admitting parol evidence would be the same in such cases as if the terms implied by law had been expressed."

And the learned judge who delivered the opinion in that case, says : " These general principles are of the utmost importance in the administration of justice. Without them, there would be no certainty in written contracts and no safety in the most formal transactions. *They ought not to be frittered away by nice distinctions to meet the hardships, real or supposed, of particular cases.*" See also *Martin* v. *Lewis*, 30 Gratt. 682.

The endorsement in the case cited from 18 Grattan was in blank. Here the assignment is written at large in terms almost identical with those used in *Maine Trust Co.* v. *Butler,* (Minn.) 48 N. W. 333, where the endorser was held liable as upon an ordinary endorsement, the court saying: " The appellant in this case, with much care, indicated his purpose to sell and transfer the note, but he failed to limit and qualify his endorsement by words which would clearly indicate such intent, if in fact it existed. It was incumbent upon him to do so if he intended or expected to escape the liability of the ordinary endorser. \* \* \* To relieve one who puts his name on the back of a negotiable promissory note from liability as endorser, he must insert in the contract itself words clearly expressing such intention."

The note in this case being made payable to two payees, it was, of course, necessary for both of them to endorse it in order to pass title. It is a negotiable note. The title to it was in Walton and Fielding. Neither could negotiate it without the assent of the other. In order, therefore, that the exclusive right to it might be vested in Fielding, it became necessary for Walton to endorse it. This he could have done in terms which would have restricted and limited his liability had he seen fit to do so, but endorsing it in the terms used by him is equivalent to a blank endorsement, and is presumed to have

been made by him in order to give credit to it by his name. By that endorsement he clothed Fielding with power to negotiate that note and receive its proceeds, and an innocent purchaser for value took it freed from any equity between Walton and Fielding. The endorsement of Walton is the legal equivalent of a blank endorsement, and carries with it the consequences of an endorsement without restriction or limitation. This view seems not only consonant to reason, but is essential to the credit of negotiable paper, and to the convenience of commercial transactions. It is also sustained by authority of the greatest weight and respectability.

In Daniel on Negotiable Instruments, sec. 684, it is said: "If several persons, not partners, are payees or endorsees of a bill or note, it should be endorsed by all of them, unless it be expressed to be payable to the order of either of them, or to the order of certain ones of them, in which cases their endorsement would suffice. Either one of the joint payees may authorize the other to endorse for him, and an assignment of his interest in the paper from one to the other carries with it such authority." See also Parsons on Bills and Notes, at p. 5.

The learned counsel for defendant in error argues with earnestness and ability that the meaning of the language just quoted is, that a joint payee may authorize his co-payee to endorse for him, "and that one of two payees, by assigning to the other all of his interest in the notes, puts it in the power of the assignee-payee to be an endorser of the whole note; that is, being then the owner of the whole note, he may, by his own act, endorse it to another and thereby assume all the liability of an endorser."

This argument, if sound, would make Walton liable as assignor upon his endorsement to Fielding, who, being thus invested with the whole interest and title to the note, would, by his endorsement, become liable as an endorser, and not as an assignor. As we have seen, the language used by Walton would, standing alone, without doubt, and as we understand

without controversy, have rendered him liable as an endorser; and while the argument presented by counsel for defendant in error is ingenious, we cannot assent to it as sound, for we are unable to perceive how an instrument confessedly negotiable, endorsed in language which, standing alone, would render him who used it liable as an endorser, is made to import a liability as assignor by reason of the fact that Walton was one of two payees, instead of being the sole payee. If Fielding, instead of endorsing the note in blank, had employed terms identical with those used by Walton, it is not denied that he would have been liable as endorser. Can we, interpreting the contracts of Walton and Fielding, written upon the same paper, the one being the legal equivalent of the other, construe Walton's as making him liable as assignor, while the liability of Fielding is that of an endorser? To do so would be, in the language of Judge Joynes, to indulge in " nice distinctions to meet the hardships, real or supposed, of a particular case."

It is claimed by the defendant in error that, no motion having been made for a new trial in the Circuit Court, the plaintiff in error is to be considered as having waived its exceptions to the rulings of that court.

The principle invoked by the defendant in error has no application here. The reason for the rule requiring a motion for a new trial to be made before the trial court is thus stated by Judge Roane in *Guerrant* v. *Tinder*, Gilmer, 36 : " The same judge may, upon a deliberate motion for a new trial, supported by argument and authority, retract a hasty opinion expressed by him in the progress of the trial." See also *Newberry* v. *Williams*, 89 Va. 299; *Town of Bridgewater* v. *Allemong*, 93 Va. 542.

In the case before us the rule should not operate because the reason upon which it rests does not exist. Here a trial by jury was waived, and the whole matter of law and fact was submitted to the judge of the court who rendered judgment thereon, and it would have been but an idle form to call

upon the court to grant a new trial upon the same law and evidence upon which it had just rendered judgment.

In *N. & W. R. Co.* v. *Dunnaway*, 93 Va. 34, there was a writ of error to the judgment on a demurrer to evidence. Defendant in error moved to dismiss the writ, but the court denied the motion, Judge Buchanan saying in his opinion that " there is no necessity to move for a new trial in the trial court in order to have the judgment on a demurrer to evidence reviewed in this court."

We are of opinion that the case is properly before us, and that there is error in the judgment of the Circuit Court, which is accordingly reversed, and this court will enter such judgment as the Circuit Court should have rendered.

*Reversed.*