Statement.

## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

CRANES NEST COAL AND COKE COMPANY v. VIRGINIA IRON, COAL AND COKE COMPANY.

September 13; 1906.

Absent, Keith, P., and Cardwell, J.

1. CONTRACTS—*Construction—Mining Lease—Incidental Rights—Case at Bar.*—It is the province of the court to construe a contract so as to give it effect, if practicable, rather than to defeat it, and, applying this principle in the present case to a certain mining lease, which, as construed by this court, confers upon the lessor the present right to use certain designated haulways and other instrumentalities through the demised premises jointly with the lessee for the purpose of transporting coal from the lessor's adjoining lands, it is held that the right of the lessor to bring coal from the adjoining land to the haulways on the demised premises is an essential incident to the right to transport it along such haulways, and hence that the lessor has the right by cutting cross-entries to connect its adjoining lands with the designated haulways. Driving such entries does not violate the terms of the present contract, nor is it within the meaning of section 2570 of the Code of 1904 forbidding excavations in any mine or shaft within five feet of the dividing line of other property without the written consent of the owner of the adjoining land.

2. CONTRACTS—*Construction.*—Where a written contract is unequivocal, the court is not at liberty to search for its meaning beyond the instrument itself.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*J. Norment Powell* and *Ayers & Fulton,* for appellant.

*D. D. Hull, Jr., Bullitt & Kelly* and *Vicars & Peery,* for appellee.

WHITTLE, J., delivered the opinion of the court.

By successive transfers of the original demise the appellant and the appellee stand in the relation of lessor and lessee with respect to a certain coal mine, located on the waters of Fuller's branch, in Wise county, Virginia.

The appellant, by virtue of the provisions of a compromise agreement, amendatory of the original lease, was proceeding to drive certain cross-entries from its adjoining coal lands, on the north and west, over the dividing line between the properties, for the purpose of forming connections with the haulways extending through the leased mine, when it was injoined by the lessee from prosecuting the work on the ground that cutting entries constituted a trespass, the consummation of which would interfere with its mining operations and rights under the lease, and inflict irreparable injury upon it.

There was a demurrer to the bill, which was overruled; and from a final decree perpetuating the injunction this appeal was allowed.

The correctness of the ruling of the trial court on the demurrer depends upon the construction of clause 4 of the compromise agreement, which is as follows: The "lessor reserves, during the continuance of this lease . . . the right of way over any and every part and portion of the . . . demised premises, for roads, railways, waterways, and sidetracks, also such use as it . . . may desire, of all tracks, roads, railways, waterways and sidetracks, constructed by the said lessee

upon the    .    .    .    demised premises; and also the right
.    .    .    to such use as it    .    .    .    may desire, for the pur-
pose of removing coal other than that hereby leased, of entry
or entries made by the said lessee through the coal hereby
leased, if the same shall not injuriously interfere with the opera-
tions of the said lessee.    Provided that proper compensation
shall be made by the said lessor    .    .    .    for such of said
tracks, roads, railways, waterways, sidetracks constructed by
the said lessee, such proper compensation to be determined by
arbitration as hereinafter provided for; and provided, further,
that the said lessee shall first have the refusal of leasing any
such other coal, so as aforesaid to be moved through the coal
hereby leased, whenever offered for lease, upon the conditions
attached to such lease by the said lessor.    But nothing herein
contained shall be construed as requiring the lessee to keep
open or maintain, otherwise than by placing in the first instance
proper supports and leaving coal necessary to properly protect
and support any entry or entries, tracks, waterways, sidetracks,
headings or ravines, for the purpose for which the lessor    .    .    .
may have the right to use the same under this section.    It is
agreed that the lessor shall have the right at any time or times
to designate not exceeding three haulways as those which it de-
sires to be kept open for its use under this section, and which
haulways, with necessary and proper ventilations and air
courses, shall at all times be maintained and preserved as here-
inbefore provided, and the lessor shall make compensation only
for the use of the tracks, roads, railways, waterways and side-
tracks therein constructed by the lessee, as hereinbefore pro-
vided; but it is understood that the arbitrary right here given
to the lessor to designate not exceeding three haulways in no
way limits the right of the lessor to use any other haulway or
haulways, and to have the same maintained as hereinbefore

provided upon payment to the lessee . . . of a reasonable compensation therefor and for the loss which the lessee may sustain by reason of leaving the coal which will be required to support such haulway, which shall be determined by arbitrators if the parties hereto cannot agree, which right is hereby expressly conferred."

The meaning ascribed by the trial court to the foregoing clause denies to the appellant the right to the joint use with the appellee of the haulways, tracks, roads, railways, waterways and sidetracks referred to therein, thus adopting the pretension of the appellee that, according to the true interpretation of the contract, the appellant's right to use the three haulways which it is specially authorized to designate, and other subsidiary easements agreed on, was not to commence until after their use had been discontinued by the lessee; or that, in any event, their use by the appellant is coupled with the condition that it shall not injuriously interfere with the mining operations of the appellee.

It is also insisted that driving these entries across the dividing line between the properties violates the stipulation of the compromise agreement that the lessee "shall not at any time drive any drift, tunnel, room or entry within sixty feet of any boundary lines mentioned in this lease . . . unless by written consent of the mining engineer of the lessor"; and section 2570, Va. Code, 1904, which forbids excavations in any mine or shaft within five feet of the dividing line of other property without the consent in writing of the owner of the adjoining lands.

We are of opinion that none of these contentions are well taken. It is quite clear that it was the general scope and purpose of the compromise agreement to invest the lessor with the right, by means of cross-entries, to connect its adjoining coal

lands with the designated haulways through the demised prem-
ises, and to use these haulways and other instrumentalities pro-
vided for, jointly with the lessee, upon the terms agreed on,
for the purpose of transporting coal mined on adjoining lands
to the surface at the drift-mouths of the leased mine.   The con-
struction insisted upon, and which prevailed in the trial court,
would wholly defeat that object.

There is nothing in the language of the compromise agree-
ment to indicate that the appellant's right to use the haulways
in the manner indicated was not to commence until after the
lessee had ceased to use them; but the contrary plainly appears.
Thus it confers on the lessor the right, at any time or times, to
designate not exceeding three haulways for its use, and imposes
on the lessee the duty, at all times, of maintaining and supply-
ing these haulways with proper ventilation and air courses.
These privileges are to continue during the term, and in return
therefor proper compensation is to be made by the lessor.   The
original lease clothed the lessor with the right to require all
entries to be kept open for future use, and the amended agree-
ment unmistakably contemplates present use of the three haul-
ways to be designated.

Having reached the conclusion that an immediate joint user
of the three haulways to be designated by the lessor was in-
tended, it necessarily follows that unavoidable inconveniences
incident to *the fair exercise* of the rights granted were within
the contemplation of the parties, and assumed by the lessee;
and it cannot now escape the consequences of the contract on ac-
count of resultant annoyances which naturally flow therefrom.
The limitation that the use of the haulways shall not injuriously
interfere with the operations of the lessee was intended to pro-
tect it against the abuse, but not against the fair enjoyment by
the lessor of its contractual rights.

In regard to the allegation that driving the cross-entries over the dividing line between the properties violates the covenant prohibiting excavations within sixty feet of the dividing line, and also the cognate statutory inhibition: It will be observed that the former is restrictive of the rights of the lessee, and the authority to drive these cross-entries being a necessary inference from the written contract is as much a part of it as if plainly expressed in the body of the instrument, and is, therefore, not in contravention of the statute.

It is the province of the court to construe a contract so as to give it effect if practicable, rather than to defeat it; and to do that in this instance we must hold that the right of the lessor to bring coal from the adjoining land to the haulways on the demised premises is an essential incident to the right to transport it along such connecting haulways. *Southern Ry. Co.* v. *Franklin, &c., Ry. Co.,* 96 Va. 693, 32 S. E. 485, 44 L. R. A. 297; *Gumbert* v. *McCracken* (Pa.), 18 Atl. 1068.

This construction of the compromise agreement disposes of the case on demurrer and renders further consideration of it unnecessary. The written contract being unequivocal, we are not at liberty to search for its meaning beyond the instrument itself. *Towner* v. *Lucas,* 13 Gratt. 705; *Woodward, Baldwin & Co.* v. *Foster,* 18 Gratt. 200; *Martin* v. *Lewis,* 30 Gratt. 672, 32 Am. Rep. 682; *Bank* v. *Walton,* 96 Va. 435, 31 S. E. 890; *Slaughter* v. *Smithers,* 97 Va. 202, 33 S. E. 544.

It follows from what we have said that the demurrer ought to have been sustained and the bill dismissed; but the dismissal must be without prejudice to the rights of the appellee to compensation for any coal to which it is entitled and of which it may be deprived by the appellant.

*Reversed.*