BALDWIN-HECKES COMPANY, APPELLEE, V. FRANK L. KAMMERLOHR: JAMES WALT CURL, APPELLANT.

FILED MAY 26, 1932. No. 28210.

*Cordeal, Colfer & Russell,* for appellant.

*Robins, Yost & Lamme* and *Fred T. Hanson,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is an action at law by the holder and purchaser of a negotiable promissory note against the maker thereof and the payee named therein who indorsed the same. From a judgment in favor of the plaintiff the indorser only appeals.

The sole question presented for determination in this review is whether the words, "October 27, 1930, I hereby assign the within note and mortgage to Baldwin-Heckes Company. (Signed) J. W. Curl," constitutes a qualified indorsement, or do they impose on Curl the liability of a general indorser. The evidence of the appellant, uncontradicted, is that, when delivered by Curl to plaintiff's agent, this note bore only the general indorsement of the payee, "J. W. Curl," a blank indorsement; that thereafter at a time and place unknown to the indorser, and as an act not in any manner participated in by him, the transferee wrote above the indorser's signature on the back of the note, "I hereby assign the within note and mortgage to Baldwin-Heckes Company." This was expressly author-

ized by section 62-306, Comp. St. 1929, which provides: "The holder may convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement." In this connection, "A special indorsement specifies the person to whom, or to whose order, the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument." 3 R. C. L. 971, sec. 180. On this state of facts appellant insists that he is an assignor only and not liable as a general indorser, and that the reasoning of the opinions in *Kane v. Eastman,* 110 Cal. App. 753, and in *Spencer v. Halpern,* 62 Ark. 595, is conclusive and should be accepted as the basis of the decision in this case. However, it is thought that neither the facts involved in these cases, nor the reasoning of the courts as applicable thereto, necessarily sustain appellant's contention.

In *Kane v. Eastman, supra,* the district court of appeals (an intermediate court in California) determined that a printed indorsement on a promissory note executed by the payee prior to the negotiation thereof in the following words, "For value received, we/I hereby transfer, assign and set over unto Charles H. Kane all my/our right, title, interest in and to the within contract/note," constituted a qualified indorsement, not it seems because of the use of the words "transfer, assign and set over," but because of the subject-matter thereof which is identified and described by the words "all my/our right, title, interest" of the payee. There is cited in this opinion in support of this conclusion the case upon which appellant relies, viz., *Spencer v. Halpern,* 62 Ark. 595, wherein the learned supreme court of Arkansas, in construing an indorsement on a promissory note by the payee thereof in the words, "For value received I hereby transfer my interest in the within note to Isaac Halpern. (Signed) Geo. Spencer," determined that the maxim, *Expressio corum quæ tacite insunt nihil operatur,* was inapplicable under the facts

of that case; that the words, "my interest in the within note," written as part of the indorsement thereon, by the hand of the indorser prior to delivery thereof, even though construed most strongly against the transferor, could not be deemed to mean anything more than "my interest," and were therefore clearly words of limitation.

Conceding arguendo the full force of the reasoning in *Spencer v. Halpern, supra,* in the statement that, "The declaration that the payee assigns or transfers all his right, title and interest in the paper would seem to limit in a most effective way the rights acquired by the transferee to those which the transferor had therein," and in the absence of statutory provision thus prevent the writing from operating as a general indorsement, still it would seem, in view of the statutory provisions having some bearing thereon, as well as the difference in the facts involved, that such statement is neither applicable nor controlling in the instant case.

In this jurisdiction the terms of the uniform negotiable instruments act, as adopted by our legislature, are mandatory, and it is to be observed that Arkansas did not adopt this legislation until seven years after *Spencer v. Halpern, supra,* was determined. So, also, in the instant case, the language descriptive of the matter transferred by the indorsement is not limited to the "right, title and interest" of the indorser, but is "the within note," thus manifestly purporting to transfer every right or benefit which the terms of this written instrument create or purport to create for and vest in the payee thereof. It would seem that the words "the within note" in themselves are wholly incompatible with the idea that a limitation is expressed thereby.

Then, too, the real interest of the payee or transferor of a negotiable instrument would naturally suggest the employment by him of words of limitation of his responsibilities in an indorsement thereof penned by his own hand. That situation is wholly absent in the instant case. Here, appellant's undisputed evidence is that the indorse-

ment in suit as he executed it, and as it existed when the note sued on was delivered, was an indorsement in blank, a general indorsement. It must be conceded that by his voluntary delivery of the instrument in suit thus indorsed, a fact which is not questioned, under the circumstances disclosed in the evidence, he became bound to the indorsee or transferee to perform all the obligations imposed by law upon an indorser who indorses without qualification. Comp. St. 1929, sec. 62-507. These facts thus created a new and definite contract, and the rights of the parties thereto became absolute and fixed upon the delivery of the writing obligatory in suit. It also appears that, after the rights of the parties to this litigation were thus vested and fixed, the transferee sought to take advantage of the provisions of the uniform negotiable instruments act. Comp. St. 1929, sec. 62-306. For this purpose, over the signature of the appellant on the back of the note, was written the words of the indorsement as it now appears.

Obviously what is contemplated by section 62-306, Comp. St. 1929, is the simple conversion for the convenience of the transferee of what was a general indorsement into a special indorsement. Indeed, the statute in terms expresses the limitation that the new agreement or indorsement so made shall be consistent with the character of the indorsement as originally made. "Consistent," as defined in Webster's New International Dictionary, includes, "Having agreement with itself or something else; * * * accordant; harmonious; congruous; compatible; not contradictory." Manifestly the terms of the statute last referred to contemplate that the special contract resulting from the change of the general indorsement in blank to a special indorsement shall be consistent with the obligations imposed by the original indorsement, not contradictory thereto, and shall not, in legal effect, be substantially changed thereby. The language of the indorsement in suit as changed by the transferee, under the terms of the statute quoted, certainly constitutes a special indorsement.

However, it does not expressly enumerate or express all obligations which the indorsement in blank imposed. It expresses nothing which is not fully implied thereby. Under these circumstances, to construe the mere omission by the transferee of a negotiable instrument to correctly declare or recite all the legal obligations implied in a "general indorsement in blank," when proceeding under section 62-306, Comp. St. 1929, to change it from a general to a special indorsement, as necessarily negativing the continued existence of that which was omitted, is not only unreasonable, but would amount to the creation by judicial construction of a new contract not contemplated by the parties, and inescapably inconsistent and incompatible with the original indorsement, as well as in contravention of the terms of the statutes involved.

The safe principle applicable to this situation seems to be "that it is often desirable to express what the law would imply, in order to remove all doubt as to intention. *Abundans cautela non nocet.*" Broom's Legal Maxims (9th ed.) 433. It therefore appears that the relation of the parties, as well as the facts of the transaction, indicate that the words of the indorsement in suit, under the circumstances of the case, would not justify, as a controlling canon of construction, the application of the maxim, *Expressio unius est exclusio alterius,* but suggest rather that the maxim, *Expressio eorum quæ tacite insunt nihil operatur,* expresses the correct rule. Broom's Legal Maxims (9th ed.) 431.

Without reference to the special circumstances of the instant case, but considering the language of the indorsement in suit as a general proposition only, this conclusion appears to accord with the views of the textwriters in the main. Thus, the learned author of 1 Daniel, Negotiable Instruments (6th ed.) sec. 688c, says: "The question arising in such cases is a nice one, and depends upon rules of legal interpretation. The mere signature of the payee indorsed on the paper imports an executed contract of assignment, with its implications, and also an executory

contract of conditional liability with its implications. The assignment would be as complete by the mere signature as with the words of assignment written over it. The conditional liability which is executory is implied by the executed contract of assignment, and the signature under it, which carries the legal title. And the question is: Does the writing over a signature on express assignment which the law imports from the signature *per se* exclude and negative the idea of conditional liability which the law also imports if such assignment were not expressed in full? We think not. It is from the fact that a payee assigns a bill or negotiable note by indorsement of his name on the back of it, that the law implies his liability as an indorser. His relation to the instrument creates the implication, and the circumstance that he sets forth that relation in express terms does not change it, for the maxim applies, *Expressio eorum quæ tacite insunt nihil operatur.* Did the payee intend merely to pass the title he should use the words 'without recourse' or some phrase of equal import. His liability is implied without words expressly creating it. To be negatived, words should be used which negate the implication. If the executed contract created implications of several executory contracts, then the expression of one of those implications might exclude others of the like class, by application of the maxim, *Expressio unius est exclusio alterius.* But when the thing done creates the implication of another to be done, we cannot think that the mere expression of the former in full can be regarded as excluding its consequence when that consequence would follow if the expression were omitted. The executory contract of the indorser to pay in the event of dishonor and notice has never in any case that we are aware of been written in full. And if the language does not negate that universally accepted implication it should be remembered that the words are to be considered as strongly as their sense will allow against those using them; and the question resolved accordingly."

As applied to the facts in the instant case, we are in-

clined to the view thus expressed by Daniel. This doctrine is wholly consistent with the intent of our statute (Comp. St. 1929, sec. 62-309) declaring that "a qualified indorsement constitutes the indorser a mere assignor of the title to the instrument" and "may be made by adding to the indorser's signature the words 'without recourse,' or any words of similar import." And while this enactment in express terms provides (Comp. St. 1929, sec. 62-110) that "the instrument need not follow the language of this chapter, but any terms are sufficient which clearly indicate an intention to conform to the requirements hereof," it further provides (section 62-117) : "Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser." These statutory provisions, it may be said, are declaratory rather than amendatory of the law merchant as it prevailed at the time of their adoption. Thus the learned author of Edwards, Bills and Notes (3d ed.) 284, in the discussion of the present subject, lays down the rule that "any form of words will answer the same purpose (as the words 'without recourse'), by which the party indorsing disclaims the responsibility of an indorser. But the words used must clearly express the intention not to incur liability as indorser."

It would seem obvious that, in view of the express terms of the Nebraska uniform negotiable instruments act, it cannot be said that the better reasoning supports the contention of the appellant. But an additional reason tending to sustain the action of the trial court in this case is to be found in the fact that the decisive majority of the courts of this nation have taken the view that the liability of an indorser is imposed upon one who makes an assignment upon the back of commercial paper, and that this conclusion, generally speaking, is in harmony with the provisions of the uniform negotiable instruments act as adopted in the various jurisdictions. *Leahy v. Haworth,* 141 Fed. 850; *Maine Trust & Banking Co. v.*

324

*Butler,* 45 Minn. 506; *Coddington Savings Bank v. Anderson,* 64 Neb. 205; 8 C. J. 370; *Smith v. Brooks,* 65 Ga. 356; *Henderson v. Ackelmire,* 59 Ind. 540; *Mayes Mercantile Co. v. Handley,* 6 Ind. T. 357; *Adams v. Blethen,* 66 Me. 19; *Markey v. Corey,* 108 Mich. 184; *Maddox v. Duncan,* 143 Mo. 613; *Davidson v. Powell,* 114 N. Car. 575; *Lenhart v. Ramey,* 3 Ohio C. C. 135; *Copeland v. Burk,* 59 Okla. 219; *Behrens v. Kirkgard,* 143 S. W. (Tex. Civ. App.) 698; *Prichard v. Strike,* 66 Utah, 394, 44 A. L. R. 1348; *Citizens Nat. Bank v. Walton,* 96 Va. 435.

In view of the unanimity which prevails among the courts of the states that have adopted substantially the provisions of the uniform negotiable instruments act, it is obvious that public policy, which demands uniformity in the rules on this subject, would necessarily require conformity with the majority holding. Indeed, we are committed to the doctrine that "The negotiable instruments act (Comp. St. 1929, secs. 62-101 to 62-1710), having been adopted by this state and others of the federal union for the purpose of securing uniformity and certainty in laws throughout the country, should be so construed as to give effect to this design." *Peter v. Finzer,* 116 Neb. 380.

It follows, therefore, that the judgment entered by the district court in this case is right, and is

AFFIRMED.