## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MONTAGUE MANUFACTURING COMPANY v. AYCOCK-HOLLY LUMBER COMPANY.

### September 25, 1924.

1. SALES—*Agency—Undisclosed Principal—Cancellation.*—Where a corporation, the M. Company, ordered from another company, the S. Company, a carload of lumber, and the S. Company, being unable to fill the order, placed an order for two carloads of lumber with the A. Company, even if the undisclosed principal theory could be invoked, which the evidence did not justify, it should avail nothing in an action by the A. Company against the M. Company, for breach of the contract of sale, as the S. Company had agreed to a cancellation of the contract before its principal had advised the M. Company of the acceptance of the order.

2. AGENCY—*Presumption of Agency—Presumption that Person is Acting for Himself.*—The law indulges no presumption that an agency exists, but instead presumes that a person is acting for himself, and not as agent for another.

3. AGENCY—*Undisclosed Principal—Rights of other Contracting Party.*—The rights of the other contracting party are not affected by the disclosure of a theretofore unknown principal.

4. SALES—*Agency—Seller held to be Principal and not Agent of Third Party—Case at Bar.*—In the instant case, the M. Company engaged in manufacturing, buying and selling lumber, ordered from the S. Company one car of lumber of special sizes. The S. Company, having no such lumber on hand, ordered from the A. Company two cars of such lumber. The A. Company not having the lumber on hand did not accept the order sent by the S. Company until it had located the same, when it wrote the S. Company accepting the order and sending copy of the letter to the M. Company. This letter was not received by the M. Company until after it had requested the S. Company to cancel the order which was agreed to prior to the receipt of the letter from the A. Company.

   *Held:* That by the unqualified acceptance of the order, and later by the cancellation of the same, the S. Company in unmistakable language declared their position to be that of principal in the transaction, and that no privity existed between the A. Company and the M. Company and no action could be maintained by the A. Company against the M. Company.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in a proceeding by motion for a judgment for money.   Judgment for plaintiff.   Defendant assigns error.

*Reversed.*

The Montague Manufacturing Company, the plaintiff in this court, is a corporation with its office and place of business in Richmond, and was and is engaged in manufacturing, buying and selling lumber of all kinds.

The Standard Lumber Sales Company (hereafter called Standard Company) was a partnership with its place of business in Richmond, and its business that of buying and selling manufactured lumber on its own account, and as agent for others.

The defendant, Aycock-Holly Lumber Company, was also engaged in buying and selling lumber, with its principal office in Jacksonville, Fla.

On March 8, 1920, plaintiff, by phone, placed an order for one car of lumber of special sizes and dimensions with Standard Company, of Richmond, and a stipulated price.   Standard Company then and there accepted the order upon terms and conditions named.

Standard Company, having no lumber on hand with which to fill the order, on the same day wired defendant in Florida as follows:

"Telegram

"C340 an collect                    "1920 Mar 8 PM 4:15
                                     "Richmond Va 337 P 8
"Aycock-Holly Lumber Co.   "C 164
    "Jacksonville, Fla.

"Ship item twenty-six list fourth Montague Manfg Co. Richmond, hundred thirty-eight dollars delivered

two dollars commission us wire acceptance; if possible make it two cars.

"Standard Lumber Sales Co."

It will be observed that while plaintiff ordered one car from Standard Company, the latter ordered two cars from defendant.

Defendant, to whom this wire was sent, did not have the stock on hand, and did not accept the order sent by Standard Company until it had located same at Ashepo, S. C., two days later.   On March 10th defendant wrote Standard Company accepting the order and sending copy of the letter to plaintiff.   This letter reached plaintiff March 12th.

On March 12th and sometime prior to the receipt by plaintiff of the copy of letter of March 10th from defendant, Montague Manufacturing Company had been in communication with Standard Company, first with reference to holding up the order, and lastly, requesting Standard Company to cancel the order, which, according to the evidence, was agreed to prior to the receipt of copy of letter of March 10th from defendant.

Immediately upon receipt of this letter of March 10th plaintiff wired defendant cancellation of the order, which defendant declined to accept. The lumber came to Richmond in due course, was rejected by Montague Manufacturing Company, and later sold by defendant in a northern market at a loss of something over $400.00, to recover which this action was instituted by Aycock-Holly Lumber Company.

*A. B. Dickinson*, for the plaintiff in error.

*S. S. P. Patteson* and *J. H. Rives, Jr.*, for the defendant in error.

McLEMORE, J., after making the foregoing state-
ment, delivered the following opinion of the court:

There are five assignments of error in the petition of
plaintiff.   Assignments Nos. 1 and 2 may be consid-
ered together, and are as follows:

"1. The action of the court in sustaining this action
by the Aycock-Holly Lumber Company when it was
neither a party nor privy to the contract sued on.

"2. The action of the court in assuming and telling
the jury in effect that there was a contract between the
Aycock-Holly Lumber Company and the Montague
Manufacturing Company, and that the facts necessary
to establish the contract had been proven in this case."

The trial court proceeded upon the theory that Stand-
ard Company was the agent of defendant, and that the
order given for the car of lumber was in legal effect an
order to Aycock-Holly Lumber Company over which
transaction the agent had no control farther than to
place the order and bind the parties.   With this theory
of the case we are unable to agree.

The evidence is without material conflict, and estab-
lishes the following as the facts:

The plaintiff placed an order with Standard Com-
pany for one car of lumber at an agreed price; that the
order was then and there accepted and the contract of
sale consummated.   The Standard Company, not hav-
ing the stock on hand, attempted to cover its require-
ments by placing with defendant, a corporation doing
the same business, not the order received and accepted
from plaintiff, but an order for two cars.

The defendant, like the Standard Company, did not
have the stock on hand, and, therefore, failed to accept
or acknowledge the order until it could find the cars of
lumber desired by the Standard Company, which, in

fact, were not located till two days later in Ashepo, S. C.

We do not think these facts constitute the relation of principal and agent. If they do, then plaintiff is liable to Aycock-Holly Lumber Company in damages upon a contract made with Standard Company, and by them accepted unconditionally at a time when defendant was unknown to plaintiff. *A fortiori*, is this true when the evidence shows that plaintiff had been released from the obligation created by the giving and acceptance of the order, before it was known that defendant was going to accept, if at all, the order of Standard Company. That Standard Company did not know where they could purchase the car of lumber to cover the sale they had made is abundantly shown by the correspondence and telegrams, and defendant, upon receipt of the enquiry, found itself similarly circumstanced. So we find them two days after receiving the order writing Standard Company, as follows:

"Jacksonville, Florida, March 10, 1920.

"Your order described below for the following material is *now* accepted on the terms and conditions printed on reverse hereof, which no salesman or representative has authority to change or waive."

If the Standard Company was acting as agent for the car ordered by plaintiff, in what capacity was it acting as to the second car when it said in the telegram of March 8th: "Wire acceptance, if possible make it two cars?" There is no evidence that plaintiff ever bought but one car. It was not a shipment upon consignment, but appears to have been an unqualified purchase by Standard Company with terms mentioned and price fixed.

[1] Even if the undisclosed principal theory could be invoked, which we think the evidence does not justify,

it would avail nothing, as the Standard Company had agreed to a cancellation of the contract before the principal had advised the plaintiff of the acceptance of the order. This order had, therefore, been accepted by Standard Company and later by it cancelled, before it was known by plaintiff that defendant was going to furnish the goods at all.

[2] "The law indulges no presumption that an agency exists, but instead presumes that a person is acting for himself, and not as agent for another." 2 Corpus Juris, 919-920.

[3] "The rights of the other contracting party are not affected by the disclosure of a theretofore unknown principal." 26 Corpus Juris, pages 840, 873-877.

To the same effect is *Leterman* v. *Charlottesville L. Co.*, 110 Va. 769, 67 S. E. 281.

[4] By the unqualified acceptance of the order, and later by the cancellation of same, the Standard Company, in unmistakable language, declared their position to be that of principal in the transaction resulting in the sale to the plaintiff of the car of lumber, the subject matter of this suit.

We are, therefore, of the opinion that no privity exists between Aycock-Holly Lumber Company and Montague Manufacturing Company, and having reached these conclusions we deem it unnecessary to discuss the other assignments of error. No action can be maintained by the defendant against plaintiff, and a judgment will be entered in this court in favor of the defendant in the court below, with its costs.

*Reversed.*