WESTERN GEOPHYSICAL COMPANY OF AMERICA, Inc. (Plaintiff),

v.

BOLT ASSOCIATES, INC. (Defendant and Third-Party Plaintiff),

v.

LITTON INDUSTRIES, INC. (Third-Party Defendant).

Civ. No. 11868.

United States District Court
D. Connecticut.

Feb. 16, 1968.

Howard A. Jacobs, Stanley A. Jacobs, Ira B. Grudberg, Thomas D. Clifford, Charles D. Gill, of Jacobs, Jacobs, Grudberg & Clifford, New Haven, Conn., for plaintiff.

Roland T. Bryan, Robertson, Bryan, Parmelee & Johnson, Stamford, Conn., for Bolt Associates, Inc.

Ralph M. Braunstein, Beverly Hills, Cal., for Litton Industries.

BLUMENFELD, District Judge.

The defendant moves for summary judgment on those claims of the plaintiff which are based on the defendant's alleged breach of an exclusive licensing agreement. The defendant asserts that it was justified in terminating that agreement on the ground of the plaintiff's own breach of certain provisions in it.

### Factual Background

During the argument on the motion and in the briefs they filed, both parties described the steps leading up to the plaintiff's acquisition of the license. A brief resume will help clarify the issue. The first step was the plaintiff's

acceptance of the defendant's conditions for rental of a certain pneumatic acoustical repeater device, named PAR, which the defendant had recently invented.[1] One of the provisions set out in the defendant's letter proposal gave the plaintiff the option during the term of the lease to acquire an exclusive license, an original and copy of which were attached to the defendant's letter. To obtain the license the plaintiff was required to return both, duly executed, plus $25,000. In return, the defendant agreed to use the $25,000 for expenses in the development of a larger PAR device it was then working on and give the plaintiff an option to acquire an exclusive license to use the larger machine with provisions similar to those in the executed license agreement. The plaintiff took up the option for the exclusive license to use PAR. The option for an exclusive license to use the larger machine has not yet been exercised.

While the defendant does advance claims that the plaintiff defaulted in the performance of other obligations under the license agreement, the one on which it lays the greatest emphasis is Western's failure to use, promote or sublicense the use of the PAR device in violation of Article 2, § 5 of the license agreement:

> "WESTERN agrees to use its best efforts to promote worldwide licensing and use of the licensed apparatus to government and non-profit institutions during the first two years of this Agreement and thereafter, or at such earlier time as WESTERN may elect, to all other possible sub-licensees of such apparatus."

The defendant insists that in the face of the undisputed facts that Western has never commercially used[2] or sub-licensed the PAR device to anyone else for use during the three years prior to cancellation of the agreement, there is no genuine issue as to the fact that Western did not use its "best efforts" within the plain meaning of § 5.

To this Western replies that the PAR device was technically imperfect and not competitive and for this reason was not used commercially by it or sub-licensed to others. Nonetheless, even though results which would produce royalties for the defendant were not realized, the plaintiff expended about $175,000 chargeable to tests, development and research in an attempt to overcome technological deficiencies in the device in efforts to make it practically usable and marketable for sub-licensing. Because such tests of PAR in the field and further development were needed to eliminate "bugs" in its use, the plaintiff contends that efforts and expenditures to accomplish that were directed toward the ultimate use and marketing objectives and thus constituted "best efforts" under the agreement within the intention of the parties.

Enough has been said to show that the parties are in dispute as to what was intended by the words "best efforts" in the exclusive license agreement.

### The Scope of Summary Judgment

Federal Rules of Civil Procedure 56(c) authorizes a District Court to enter summary judgment

> " * * * if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * "

---

1. The PAR air gun explosively releases a burst of compressed air which causes a sound wave to be reflected off the ocean floor and the rock strata below. With the aid of seismic recording gear, an engineer can determine the nature of the different rock strata by the various rates of reflection of the sound wave. The device is primarily commercially usable in oil exploration.

2. Western's business is to make geological surveys for others who are interested in carrying out offshore explorations for oil or mineral deposits lying below the bottom of the ocean. It enjoys a dominant position in this specialized area.

The critical question here is whether the plaintiff so incontrovertibly failed to exercise the "best efforts" called for by the contract that reasonable men would be able to decide that issue in only one way.

### The Role of Inferences

■ Deferring for a moment the question of what the parties intended by "best efforts," the defendant's position is that since the plaintiff admittedly did not use PAR commercially and did not obtain any sub-licenses, it *must* be inferred that the plaintiff did not exert its best efforts to "use and promote" etc. No direct evidence was offered that the plaintiff sat on its hands and gave up the struggle to use or sub-license PAR as a bad job. The inference which the defendant urges must be drawn is one open to the trier, but it is not compelled by any rule of law, nor is it the only one which might reasonably be drawn. There may be many reasonable explanations for why PAR was not used or sub-licensed. The plaintiff's affidavits and depositions suggest several. Actually, the rule for drawing inferences works for the plaintiff. "The party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence." Cram v. Sun Ins. Office, Ltd., 375 F.2d 670, 674 (4th Cir. 1967). This rule is applied as rigorously to test the grant of a motion for summary judgment as the grant of a motion to set aside a verdict. See Ramsouer v. Midland Valley R.R., 135 F.2d 101, 106 (8th Cir. 1943).

### The Parties' Intent as a Question of Fact

The defendant's difficulties, so far as this motion is concerned, do not end here. Other questions loom beyond. The phrase "best efforts" emphasizes a theme rather than defines a particular course of conduct to be pursued. While the quality of the efforts expected from the plaintiff is stated, there is not a single direct reference in the agreement to the scope of or the direction in which

the efforts should be made. The plaintiff claims that it was understood that when it was put in charge of marketing PAR it was because it would know how to cope with the problems of making its use in the field practicable, to evaluate its worth in comparison to existing devices and methods, and to persuade others to sub-license it on competitive terms.

The plaintiff offers affidavits and deposition testimony that the overriding need was to overcome mechanical deficiencies in PAR which its field tests revealed before PAR could be technologically useful or economically marketable. It says it spent about $175,000 in efforts to solve these deficiencies.

### Parol Evidence

■ The defendant contends that the parol evidence rule bars any inquiry into surrounding circumstances to determine what the parties intended by use of the phrase "best efforts." As this agreement states that it was executed in the State of New York (Art. 5, § 2) and is to be governed by its laws, New York's law on the applicability of the "parol evidence rule" must be considered. See Parks v. Baldwin Piano & Organ Co., 262 F.Supp. 518, n. 4 (D.Conn.1967). New York recognizes the general rule that a contract when once integrated in writing shall not be varied or contradicted by testimony of antecedent oral agreements and understandings. But as reputable authority has pointed out,

"[n]o parol evidence that is offered can be said to vary or contradict a writing until by process of interpretation it is determined what the writing means * * *. Even if a written document has been assented to as the complete and accurate integration of the terms of a contract, it must still be interpreted; and all those factors that are of assistance in this process may be proved by oral testimony." 3A, Corbin, Contracts 412–413, § 579 (1960)

The rule "comes into operation only when the meaning of that which may not be varied or contradicted is determined." Asheville Mica Co. v. Commodity Credit Corp., 335 F.2d 768 (2d Cir. 1964). In M. O'Neil Supply Co. v. Petroleum Heat & Power Co., 280 N.Y. 50, 55, 19 N.E.2d 676, 679 (1939), the Court of Appeals of New York stated:

"The fundamental rule in the construction of all agreements is to ascertain the substantial intent of the parties. Kennedy v. Porter, 109 N.Y. 526, 544, 17 N.E. 426; Chesapeake & O. Canal Co. v. Hill, 15 Wall. 94, 21 L.Ed. 64. The purpose to be accomplished and the object to be advanced may be considered (Manson v. Curtis, 223 N.Y. 313, 320, 119 N.E. 559, Ann.Cas. 1918E, 247; Atwater & Co. v. Panama R. R. Co., 246 N.Y. 519, 524, 159 N.E. 418) and may, if necessary, be shown by parol evidence as bearing on the consideration for the written instrument. Hutchison v. Ross, 262 N.Y. 381, 398, 187 N.E. 65, 89 A.L.R. 1007. *If it is claimed by defendant that a construction should be placed on the contract other than has been indicated*, or any doubt arises from the writing itself, the court must look into the intention of the parties to be derived not alone from the words used but it must be read, so far as they may be ambiguous, in the light of the surrounding facts and circumstances (Berry Harvester Co. v. Walter A. Wood Mowing & Reaping Mach. Co., 152 N.Y. 540, 46 N.E. 952; Wilson v. Ford, 209 N.Y. 186, 196, 102 N.E. 614), in which event parol evidence may be introduced as to those facts and circumstances, without violating the parol evidence rule. Matter of Smith's Will, 254 N.Y. 283, 289, 172 N.E. 499, 72 A.L.R. 867; Mascioni v. I. B. Miller, Inc., 261 N.Y. 1, 184 N.E. 473. * * *" (Italics added).

While the portion of the court's opinion I have italicized indicates an expansive concept of ambiguity which closely approaches the view that "courts should forthrightly abandon the prerequisite of finding ambiguity before admitting evidence of 'surrounding circumstances,'" Shiya v. National Comm. of Gibran, 381 F.2d 602, 607, n. (2d Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 778, 19 L.Ed.2d 842 (1968), it is not necessary either to discard or give an expansive concept to the ambiguity requirement here, for the loosely woven phrase "best efforts" obviously draws in more than one meaning. "Language is ambiguous, within the meaning of the parol evidence rule, when it may reasonably be construed in more than one sense," Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 951 (2d Cir. 1965), or "where words used in a written contract are susceptible of more than one interpretation." Anchin, Block & Anchin v. Pennsylvania Coal & Coke Corp., 284 App. Div. 940, 134 N.Y.S.2d 737, 739 (1954), aff'd, 308 N.Y. 985, 127 N.E.2d 842 (1955), quoting with approval from Smith v. Smith, 277 App.Div. 694, 695, 102 N.Y.S.2d 584, 586 (1951).

It follows that parol evidence of circumstances surrounding the making of the exclusive licensing agreement is admissible to determine what, in fact, were the intentions of the parties. "[T]he question of what is the meaning that should be given by a court to the words of a contract, is a question of fact * * *. There is no 'legal' meaning, separate and distinct from some person's meaning in fact." 3A Corbin, Contracts 219, § 554; Lamb v. Norcross Bros. Co., 208 N.Y. 427, 102 N.E. 564 (1931). Cf. Lewron Television, Inc. v. D. H. Overmyer Leasing Co., 43 F.R.D. 5, 9 (D. Md.1967).

Since there is a genuine issue as to the intentions of the parties, which can and must be resolved by resort to extrinsic facts, summary judgment is not appropriate.

### The Additional Grounds

The remaining grounds of the defendant's motion are that the plaintiff paid

only the minimum guaranteed royalties and did not report or account for any earnings from commercial use or from sub-licenses of PAR. The measure of compliance required in these respects stems from whether the plaintiff exercised "best efforts," and since the meaning of that phrase must be ascertained before it can be decided whether the plaintiff is in default sufficiently to justify the defendant's cancellation of the agreement, summary judgment for the defendant on these grounds is likewise inappropriate.

Motion Denied.