In re **CHANTILLY CONSTRUCTION CORPORATION, Debtor.**

**CHANTILLY CONSTRUCTION CORPORATION, Plaintiff,**

v.

**JOHN DRIGGS COMPANY, INC., and The Aetna Casualty and Surety Company, Defendants.**

**Bankruptcy No. 82–01571–A. Adv. No. 83–0303–A.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Jan. 8, 1985.

Robert G. Watt, David C. Romm, Watt, Tieder, Killian & Hoffer, McLean, Va., for debtor.

Stephen J. Johnson, Andrew D. Ness, Lewis, Mitchell & Moore, Vienna, Va., for defendant, John Driggs Company, Inc.

John F. Mardula, Vienna, Va., for John Driggs Co., Inc. and the Aetna Casualty and Surety Co.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This matter arises upon the filing of a motion for summary judgment by John Driggs Co. ("Driggs"), defendant herein. On June 14, 1983, Chantilly Construction Corporation ("Chantilly" or "debtor") filed a multi-count complaint against Driggs. The genesis of debtor's complaint concerns a construction contract on Interstate Highway I-66 ("I-66") that Driggs entered into as a prime contractor with the Virginia Department of Highways and Transportation ("VDH&T"). Chantilly was one of several subcontractors hired by Driggs on the I-66 project.

In a previous opinion, the Court has examined in detail the relationship between Driggs and Chantilly pursuant to Chantilly's motion to disqualify defendant's counsel because of a perceived conflict of interest. In an extensive opinion entered on April 25, 1984, this Court denied debtor's motion. *In re Chantilly Constr. Corp.*, 39 B.R. 466, 473 (Bankr.E.D.Va.1984). The ruling here, however, requires that we review once again some of the history of this case.

On December 1, 1977, Driggs entered into a construction contract with the VDH&T for work to be performed on a section of I-66. Four days later, Driggs contracted with Chantilly as one of eight subcontractors eventually hired for the project. Under the terms of the subcontract, Chantilly was to construct a box culvert. Various aspects of the entire project were delayed, and the instant parties initially attributed the delays to each other. However, on March 15, 1982, Chantilly and Driggs entered into a Release, Liquidation and Consolidation Claim Agreement ("Claim Agreement"). In the Claim Agreement, Chantilly and Driggs agreed to mutually release each other from any claims arising from the I-66 project and to look to the VDH&T for additional compensation as the entity ultimately responsible for the delays.

As this Court held previously, the Claim Agreement indicates the parties intended that Driggs be responsible for presenting to the VDH&T the position of all of the subcontractors with respect to their entitlement to recover damages resulting from the delay. *In re Chantilly Constr. Corp.*, 39 B.R. at 472. Each of the subcontractors was responsible for presenting and supporting its individual amount of damages claimed. *Id.* The total amount of the consolidated claim was $11,136,832.00. Chantilly's claim of $341,842.00 constituted 30.6% of the total consolidated claim.

In the latter part of 1982, the VDH&T denied responsibility for any compensation pertaining to Chantilly's portion of the consolidated claim. The VDH&T indicated that the work to be performed in Chantilly's subcontract was completed approximately on schedule. On January 14, 1983, Driggs and all of the subcontractors, including Chantilly, attended a meeting with the Commissioner of the VDH&T. During that meeting, the president of the debtor made a presentation concerning Chantilly's portion of the consolidated claim. Four days later, the VDH&T met with Driggs and Chantilly to discuss further Chantilly's claim. After the VDH&T requested some additional information, the vice-president of the debtor met over a two-day period with Driggs and Driggs' attorney to supplement the entitlement aspect of Chantilly's claim. Chantilly also submitted to the VDH&T, through Driggs, additional material to support the amount of damages claimed. Thereafter, Driggs accepted a settlement offer from the VDH&T on the consolidated claim in the amount of $4,700,000.00. In the settlement, the VDH&T allotted to Chantilly the amount of $2,440.00, approximately 0.7% of the amount claimed by Chantilly.

The origin of debtor's complaint *sub judice* is the claimed breach of both the construction subcontract and of the Claim Agreement. The Claim Agreement was entered into by Driggs and all of the subcontractors on the I–66 project. Only in one instance, not relevant to the instant matter, was the agreement modified in any way. The Claim Agreement evidences the agreement of Driggs and the several subcontractors on the I–66 project to mutually release each other from claims stemming from the project and to proceed in a cooperative manner against the VDH&T.

Debtor's complaint originally listed six counts, five against defendant Driggs and the sixth against the Aetna Casualty and Surety Company under a payment bond. Subsequent to filing its complaint, debtor agreed to the dismissal of Count VI against the insurance company. We will, therefore, address the remaining five counts against Driggs seriatim.

In Count I of its complaint, Chantilly alleges that Driggs breached the construction subcontract between the parties. Debtor alleges that Driggs failed to adequately supervise the construction site and failed to coordinate the prompt removal of active, subsurface sanitary lines and subsurface utility lines. In Count II of its complaint, Chantilly alleges that Driggs breached the Claim Agreement by failing to present Chantilly's claim to the VDH&T in good faith. In Count III, Chantilly alleges that Driggs further breached the Claim Agreement by failing to make a fair and reasonable payment to Chantilly from the $4.7–million settlement negotiated with the VDH&T.

Count IV of debtor's complaint contains allegations that Driggs failed to pay for the full value received from Chantilly's performance. In Count V of its complaint, Chantilly alleges that by failing to pay a reasonable amount for Chantilly's claim Driggs breached a fiduciary duty owed to the debtor as its agent having the responsibilities for submitting and supporting debtor's claim to the VDH&T.

Initially, Chantilly argues that Driggs may not cite as a defense to any of the counts of the complaint the mutual release contained in the Claim Agreement. Debtor's position is based on its allegation that Driggs breached the Claim Agreement by failing to present Chantilly's claim to the VDH&T in good faith. In response, Driggs states that the Claim Agreement is a severable contract. Thus, even if a breach of Driggs' obligation to argue Chantilly's entitlement to damages occurred, that breach would have no effect on the validity of Chantilly's release of all claims against Driggs arising from the subcontract. Driggs asserts that the Claim Agreement illustrates the intent of the parties first to settle their differences and mutually release each other and second to proceed thereafter only against the VDH&T.

Driggs maintains further that the parties exchanged part performances as agreed equivalents. Driggs paid Chantilly $14,-539.02 as the balance due on the subcontract price of $482,953.05, and each party released the other. Driggs argues that this portion of the Claim Agreement constituted "agreed equivalents" and maintains that the release remains enforceable even assuming that Driggs failed to perform under some other portion of the Claim Agreement. Driggs correctly asserts that Virginia law has adopted such an analysis. *See American Chlorophyll, Inc. v. Schertz*, 176 Va. 362, 372–73, 11 S.E.2d 625 (1940).

Chantilly also questions the good faith of Driggs in entering into the Claim Agreement. The Claim Agreement premised that the parties agreed that all of the claims Chantilly was presenting through Driggs arose solely from VDH&T action or inaction. Yet, when questioned, Mr. John Driggs who signed the Claim Agreement on behalf of defendant indicated that he believed Chantilly was responsible for much of the delay. Moreover, Chantilly asserts it was never informed that Driggs had a position other than that indicated in the Claim Agreement. Additionally, Chantilly argues that certain phrases in the Con-

solidation Agreement such as "Driggs agrees to pursue ... relief ... to the extent commensurate with good contract administration" or "in accordance with sound contract administration" must be evaluated in light of the surrounding circumstances to determine what the parties intended by the use of the words "good" and "sound". *See Western Geophysical Co. v. Bolt Associates, Inc.*, 285 F.Supp. 815 (D.Conn.1968).

Driggs responds to the latter two points in the following manner. Initially, with respect to the "good faith" argument, Driggs maintains that Mr. Driggs' personal opinion at the time of the execution of the Claim Agreement is irrelevant. Driggs argues that an unexpressed state of mind is immaterial because the acts and words of a party reasonably interpreted to manifest an intent to agree are the essential elements for the formation of a contract. Secondly, Driggs distinguishes the *Western Geophysical* case cited by Chantilly. In the cited case, a party was to use "best efforts to use and promote worldwide licensing and use...." The District Court found the phrase to be so vague and open-ended that parole evidence was required to determine the scope of the intended obligation. *Id.* at 818. Driggs argues that its obligation to pursue the consolidated claim "to the extent commensurate with good contract administration and optimum recovery on the claims as a whole" is of a much narrower scope and parole evidence is not required.

### Count I—Driggs' Alleged Breach of the Subcontract.

Instead of addressing the merits of debtor's allegations in the first count of the complaint, Chantilly's memorandum in opposition to the summary judgment motion contains the debtor's rationale as to how Driggs breached the Claim Agreement. Thus, the Court must turn to debtor's complaint to ascertain the basis of the claimed breach of the subcontract.

In its complaint, debtor alleges that Driggs failed to remove and relocate active, subsurface sanitary lines. Additionally, Chantilly alleges that Driggs "misrepresented the non-existence" of additional subsurface utility lines and failed to relocate those utility lines in a manner consistent with allowing Chantilly to perform promptly under the subcontract. Driggs denies these allegations and points to the mutual release in the Claim Agreement, arguing that even if such a breach of the subcontract existed Chantilly had waived any right it may have had to claim such a breach.

### Count II—Driggs' Alleged Breach of the Claim Agreement.

Chantilly alleges that Driggs breached the Claim Agreement in several ways. The breaches alleged are not specific breaches of certain provisions of the Claim Agreement but rather of Driggs' duty to represent Chantilly's claim in a reasonable, good faith and diligent manner. First, Chantilly prepared its claim based on Driggs' indication that the delays were caused by the VDH&T. In fact, John Driggs felt much of the delay was the fault of Chantilly. Second, without Chantilly's knowledge, Driggs submitted a revised schedule showing a later completion date for Chantilly's work than that contained in the original schedule. Chantilly argues that this act is significant, particularly in light of the VDH&T's initial denial of Chantilly's claim based partially on Chantilly's work being completed nearly on schedule.

Third, Chantilly attended both the January 1983 meetings with the VDH&T under protest because of the very short notice it received from Driggs as to the time of the meetings. In both instances, Chantilly claims it was forced to make presentations without adequate time to prepare. Fourth, Chantilly was told that the additional material submitted to support its claim was sufficient, and it received no requests for additional information on entitlement or costs. Fifth, although negotiations on behalf of Chantilly were conducted by John Driggs, he never reviewed the supplemental submission. The settlement allotted Chantilly only 0.7% of its claim while granting approximately 43% of the entire consolidated

claim against the VDH&T. Sixth, Driggs never determined the exact nature of the VDH&T's denial of Chantilly's claim. Seventh, Driggs agreed to the settlement offer without consulting Chantilly.

In response, Driggs initially states that several facts have been set forth which establish Driggs' *prima facie* fulfillment of its obligations to Chantilly. Driggs' position is correct in that the additional facts raised by Chantilly are merely supplemental rather than contradictory. Thus, there is no basic dispute as to the facts presented. Despite John Driggs' personal thoughts regarding the cause of the delay, Driggs argues that the exhibits submitted indicate he conscientiously sought to obtain the full amount Chantilly requested. Driggs argues that Chantilly has presented no evidence which would indicate Mr. Driggs did anything but his best on behalf of all the holders of the consolidated claim. Additionally, copies of letters from Mr. Driggs to the debtor sent before the execution of the Claim Agreement were submitted. In those letters, Mr. Driggs states to the president of the debtor that Driggs felt Chantilly caused much of the delay. Thus, Driggs argues that the debtor knew of Mr. Driggs' personal feelings years before the execution of the Claim Agreement but elected to take part in the agreement notwithstanding that actual knowledge. Second, the schedule submitted to VDH&T contained a completion date for Chantilly's work of May 31 or June 1, 1978. There is no doubt but that Chantilly's subcontract shows the completion date to be April 29, 1978, approximately one month earlier. Driggs questions the materiality of this fact, however, in light of Chantilly's claim that it experienced a delay of 8½ months. Furthermore, the VDH&T indicated that it felt both dates were unrealistic considering the type of work to be performed and considering the fact that the work was to be commenced during the winter months. Driggs argues that the one-month difference in the completion dates can in no way be considered material.

Third, Driggs avers that the record demonstrates that Chantilly received the same notice of the meetings as the other subcontractors. The short notice received by the subcontractors was a product of the schedule of the VDH&T Commissioner. Driggs maintains that Chantilly was aware that the claim was pending and knew it could be called on to support its claim at any time. Additionally, the second January 1983 meeting was an opportunity granted Chantilly to present its claim that no other subcontractor was afforded. Although the exact date for the second meeting was unknown, the second meeting was discussed with debtor's president at the conclusion of the initial meeting, and debtor was aware that the second meeting was to be held in the next few days. Fourth, the VDH&T indicated to the debtor that its submission had to be revised. Despite this request, the debtor's only attempt at revision was to add some long-hand explanations to the original submission, which submission had resulted in the initial denial of Chantilly's claim. Furthermore, Chantilly's claim was denied before either of the meetings with the VDH&T and, though aware of this, Chantilly never took advantage of the opportunities provided by the two subsequent meetings to determine the basis of the VDH&T's denial and to discover the nature of the information the VDH&T required.

Additionally, although Mr. Driggs did not look at the second submission, defendant argues that he was sufficiently familiar with Chantilly's claim for the level of discussions conducted with the VDH&T Commissioner. Those conversations were not about any portion of the consolidated claim in detail but only about the claim in general. The Commissioner depended upon his staff to handle the technical aspects of the claim. Finally, Driggs argues that it was not required to seek approval of the subcontractors before accepting any settlement offer.

### Count III—Driggs' Alleged Failure to Make a Fair and Reasonable Payment.

Chantilly argues that the intent of the parties was to recover a "fair and reason-

able" payment for the debtor. Additionally, the debtor argues that the parties did not contemplate that the VDH&T would be arbitrary in their analysis of Chantilly's claim. Driggs responds that the "fair and reasonable" language cited in the Claim Agreement comes into play only if the VDH&T failed to itemize the awards. In fact, Chantilly does not dispute that the VDH&T specifically allocated the $2,440.00 to Chantilly. Furthermore, Driggs argues that it is unreasonable to read the Claim Agreement as any sort of warranty in that both parties knew the award would be made by an independent third party, either the VDH&T or the courts.

### Count IV—Driggs' Alleged Failure to Pay for the Full Value Received.

The debtor argues that the Claim Agreement contemplates that Chantilly has claims for compensation above the contract amount due to the delays experienced. As a result, Chantilly maintains that it has not been fully paid for the work performed. Driggs responds initially by stating that Chantilly has received the full contract amount of $482,953.05. Moreover, the subcontract was a contract for a fixed amount of work at a fixed price not a "cost plus" contract. To the extent the subcontract contemplates a claim for additional compensation, it also contemplates that Chantilly's entitlement to such additional compensation must be premised on some legal basis, such as tort or breach of contract. Driggs argues that there is no such basis.

### Count V—Driggs' Alleged Breach of Fiduciary Duty Owed to Chantilly.

Chantilly maintains that because of the special trust the debtor placed in Driggs to represent its claim Driggs owed a fiduciary duty to Chantilly. See H–B Ltd. Partnership v. Wimmer, 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979). Chantilly contends that some substantial question has been raised as to Driggs' performance under the Claim Agreement and as to whether Driggs has fulfilled its fiduciary obligation. Driggs responds that Chantilly has asserted neither any specific facts to show the existence of a fiduciary relationship nor has cited any law to support an implied fiduciary relationship which would arise between two independent contractors who enter into an arms length agreement. Driggs argues that the Claim Agreement was a contractual arrangement devoid of any fiduciary considerations. Driggs concludes that there is no basis for finding some overriding fiduciary duty outside of the contractual relationship.

Rule 7056 of the Rules of Bankruptcy Procedure states that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is applicable to an adversary proceeding in bankruptcy. R.Bankr.P. 7056. Before a court may grant a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The material filed with the court pursuant to the motion for summary judgment must be viewed by the court in the light most favorable to the party opposing the motion. Adickes v. S.H. Kress and Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The Fourth Circuit Court of Appeals generally has not looked with favor on the granting of a motion for summary judgment, stating in one instance that "summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Phoenix Savings and Loan, Inc., v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir.1967).

In the case at bar, the debtor estimated its claim for damages due to delay on the I–66 project to be $341,842.00. Initially, the VDH&T denied Chantilly's claim because the project was completed nearly on schedule. After two meetings with the VDH&T in January 1983 and after working with the defendant on additional material to support its claim, Chantilly was allocated

$2,440.00 in the VDH&T settlement offer accepted by Driggs.

■ Both Chantilly and Driggs are in agreement that if Driggs has not breached the Claim Agreement the mutual release and certain other provisions contained therein would shield Driggs from most, if not all, of the counts listed in the debtor's complaint. Thus, we must direct our attention to a determination as to whether Driggs is in breach of the Claim Agreement. Chantilly alleges that Driggs failed to represent Chantilly's claim in a reasonable, good faith and diligent manner, breaching the Claim Agreement in that Driggs failed to represent debtor's claim in a number of ways. Two examples of those instances are failing to provide Chantilly with adequate notice of the two January 1983 meetings and failing to inform Chantilly that Driggs did not actually believe the delay experienced was attributable to the VDH&T.

Initially, it is clear that none of the subcontractors, including Chantilly, received what could be considered adequate notice as to the meetings with the VDH&T. The lack of notice, however, was a product of the schedule of the Commissioner of the VDH&T. Driggs only received notice of the January 14, 1983 meeting two or three days prior to that date and informed the subcontractors of the meeting as soon as the arrangements were finalized. Clearly, the timing of the meetings was not something Driggs could control. Additionally, Chantilly was afforded an opportunity *no other subcontractor* received by meeting a second time with the VDH&T Commissioner and Driggs on January 18, 1983.

Chantilly also complains that Driggs failed to inform the debtors that Driggs did not believe the delay was caused by the VDH&T. Chantilly contrasts Mr. Driggs' personal belief with the defendant's expressed position regarding the source of the delay. This comparison is an attempt by the debtor to insinuate a lack of good faith on the part of Mr. Driggs as the prime negotiator on behalf of the consolidated claim. After a very careful examination of the record submitted by the parties, this Court cannot find any evidence that Mr. Driggs acted in other than a correct and proper manner and, therefore, Chantilly's position cannot be sustained. Furthermore, upon an examination of the record we find letters written in 1978 by Mr. Driggs to the president of Chantilly. In those letters, Mr. Driggs clearly ascribes the delay experienced by the parties to Chantilly. Thus, the debtor was aware of the personal feelings of Mr. Driggs, however relevant those feelings may be, three-and-one-half to four years prior to entering into the Claim Agreement. Thus, debtor's prior knowledge of Mr. Driggs' opinion in addition to the noticeable absence of any evidence of fraudulent, or even improper, dealings by Mr. Driggs entitle this particular complaint little weight.

Perhaps debtor's most significant allegation is that Driggs submitted to the VDH&T a completion date for Chantilly's work that was later than the completion date contained in the subcontract. This revision of the completion date was done without Chantilly's knowledge. In fact, the defendant admits submitting a completion date to the VDH&T that is one month later than that contained in the subcontract. This allegation is especially significant based on the grounds stated by the VDH&T for the initial denial of Chantilly's portion of the consolidated claim. The VDH&T denied Chantilly's claim, indicating its belief that Chantilly's work was completed approximately on schedule.

The evidence submitted to the Court demonstrated that the completion date for the entire I–66 project was in October 1979. The completion date contained in the subcontract for Chantilly's work on the box culvert was April 29, 1978. The date contained on the revised schedule submitted to the VDH&T was June 1, 1978. Furthermore, the completion date contained in the revised schedule was actually the same as that contained in the original schedule. Thus, the one month inconsistency between the subcontract completion date and the scheduled completion date had existed as of

1978. As a practical matter, there was little either party could do to correct this inconsistency four years later when the Claim Agreement was executed.

Although the original denial of the Chantilly claim indicated that the box culvert had been completed "very close to the time limit of the original subcontract agreement", this must have been in error because such a statement is not supported by the facts. The original contract called for completion of the box culvert in April 1978. In fact, the box culvert was not completed until much later. Considerable light is shed upon this somewhat perplexing problem by a reading of the depositions taken of the Commissioner and of the resident engineer of the VDH&T. In both instances, the individuals testified that the Chantilly claim was denied because the work was completed within the original contract completion time of October 1, 1979. Both individuals testified that they believed the April 1978 and June 1978 dates were too optimistic. In consideration of the time of year the initial stages of the work were to be performed and the nature of the work, the VDH&T believed that a more realistic completion date for Chantilly's work would be September or October of 1978. In light of the foregoing, it is impossible to find that Driggs' one-month revision of the schedule without Chantilly's knowledge was material to the VDH&T's consideration of Chantilly's claimed eight-and-one-half month delay. Nor can such an action be found to constitute a breach of the Claim Agreement.

Debtor also cites as breaches of the Claim Agreement Driggs' failure to consult with Chantilly prior to settling the consolidated claim and John Driggs' negotiation on behalf of Chantilly and subsequent acceptance of the settlement offer without reviewing the supplemental materials submitted by the debtor. Chantilly complains of Driggs' failure to consult with the debtor prior to accepting the settlement in the absence of any such requirement. In fact, the Claim Agreement which governs the relationship of the parties in this instance specifically contemplates in paragraph 7 of that agreement that Driggs is to attempt to obtain the settlement. The Claim Agreement is eloquent in its silence regarding a requirement that Driggs consult with any of the subcontractors regarding a settlement of the consolidated claim. Moreover, the president of the debtor discusses the agreement in a letter written to Driggs on March 25, 1982. Debtor indicates its belief that the Claim Agreement is "eminently fair." The only reservation Chantilly had with the agreement was Driggs' sole discretion under paragraph 7 of the Claim Agreement to determine what constitutes a "fair and reasonable" payment to Chantilly should the award be made in a lump payment. Chantilly concludes, however, by stating "we do not insist on this matter, but would advance [it] only as a suggestion if others to be a party to this [agreement] advise some change."

Let us now turn to John Driggs' alleged failure as chief negotiator because of his representation of Chantilly's interest without reviewing the supplemental material submitted by Chantilly after January 18, 1983. Chantilly argues that this failure of Driggs in combination with the acceptance of a settlement which awarded Chantilly less than one per cent (1%) of its claim cannot possibly embody representation in a reasonable, good faith and diligent manner. This Court does not agree that John Driggs' failure to review Chantilly's final submission constitutes a breach of the Claim Agreement. After the January 1983 meetings, the negotiations conducted by Driggs consisted of discussions of the claim as a whole with the Commissioner of the VDH&T. Specifics of the individual claims constituting the consolidated claim were not discussed. At this time, Driggs had been involved with the negotiating process, including discussions of Chantilly's claim, for nearly a year. Driggs indicates that he was sufficiently familiar with Chantilly's claim without looking at a copy of the debtor's final materials in light of the nature of the concluding discussions with the Commissioner of the VDH&T, and

nothing in the record would cause the Court to doubt Mr. Driggs' statement.

Based on the foregoing, this Court cannot find that any basis exists to establish a breach of the Claim Agreement by Driggs. After a very careful review of all of the materials submitted by both parties, there can be no doubt whatsoever that the Claim Agreement remains a viable instrument which governs the relationship of Chantilly and Driggs in this matter. Thus, the several provisions of the agreement which provide for the mutual release of all of Chantilly's claims arising out of the I–66 project remain enforceable. By executing the agreement, the debtor indicated its desire to release Driggs from "any and all liability, charges, backcharges, claims, counterclaims, or causes of action of every character whatsoever arising out of or relating to the performance of the work under the Subcontract...." To further this desire, Chantilly agreed "to proceed only against VDH&T in the prosecution of Subcontractor's claims." Additionally, upon the receipt of the balance due on the subcontract, Chantilly agreed that such payment "shall represent full and complete settlement and satisfaction to Subcontractor for all monies now or hereafter due and owing by Driggs to Subcontractor arising out of said Subcontract...." Furthermore, Chantilly agreed that as to its claims "Subcontractor shall have [no] ... right against the other [Driggs] thereon, and all said rights or causes of action pertaining thereto are hereby mutually waived...."

Chantilly maintains, however, that granting defendant summary judgment in the instant case would be inappropriate because of the ambiguous nature of the Claim Agreement. Specifically, Chantilly refers to Driggs' duty to pursue relief "to the extent commensurate with good contract administration" and to seek a settlement on the consolidated claim" in accordance with sound contract administration." Debtor asserts that the words "good" and "sound" are so unclear as to require additional evidence so that the Court may determine the intent of the parties.

An agreement is not necessarily ambiguous because a party raises a question as to the meaning of some of the language contained in the agreement. *Richardson v. Econo-Travel Motor Hotel Corp.*, 553 F.Supp. 320, 323 (E.D.Va.1982), citing *Southern Constr. Co. v. United States*, 176 Ct.Cl. 1339, 364 F.2d 439, 453 (1966). A court must look to the entire document to determine the intent of the parties. *Matter of Murphy*, 9 B.R. 167, 177 (Bankr.E.D.Va.1981); *Nelson and Co. v. Development Corp.*, 207 Va. 386, 389, 150 S.E.2d 142 (1966). Extrinsic evidence may only be consulted when the court determines that an agreement is unclear or ambiguous. *Russell Co. v. Carroll*, 194 Va. 699, 702–03, 74 S.E.2d 685 (1953). After a careful review of the Claim Agreement, this Court is unable to make such a finding. Thus, because the agreement as a whole is unambiguous, we are unable to look beyond the four corners of the document even if the results obtained appear harsh. *See* 4B M.J., *Contracts*, § 40, 50–51 (1974). Such a holding is required in that the agreements made by contracting parties constitute the law between those parties. *Walker & Laberge Co. v. First Nat'l Bank*, 206 Va. 683, 690, 146 S.E.2d 239 (1966); *Mercer v. South Atlantic Life Ins. Co.*, 111 Va. 699, 702, 69 S.E. 961 (1911); *Cranes Nest Coal Co. v. Virginia Iron Coal Co.*, 105 Va. 785, 790, 54 S.E. 884 (1906).

As a result, defendant's summary judgment motion must be granted as to Counts I, II and IV of debtor's complaint. Because Chantilly has agreed to the dismissal of Count VI of its complaint, there remain only Counts III and V to be discussed.

In Count III of its complaint, Chantilly alleges a further breach of the Claim Agreement by Driggs' failure to make a "fair and reasonable" payment to Chantilly out of the $4.7–million payment received from the VDH&T. Chantilly argues that the Claim Agreement evidences an intent of the parties to attain a maximum recovery on the consolidated claim and indicates that to satisfy such an intent it is implicit

that each constituent claim should receive the maximum amount possible. This argument, however, does not protect the debtor from the issuance of summary judgment on Count III.

As indicated earlier in this opinion, Driggs had the sole discretion in determining what constituted a "fair and reasonable" payment under paragraph 7 of the Claim Agreement. Such discretion was to be exercised, however, only if the VDH&T made a lump sum payment. Although Chantilly protests the manner in which its award was computed, Chantilly does not dispute that the VDH&T allocated an award of $2,440.00 toward the debtor's claim. Under paragraph 7 of the agreement, Driggs was directed to seek such an allocation. Because the allocation was made, Driggs was not required to determine a "fair and reasonable" payment to Chantilly. Furthermore, Driggs could not guarantee that the claimants' expectations would be fulfilled. In fact, the parties even contemplated that a subcontractor might receive nothing on its claim. In consideration of that eventuality, paragraph 5 of the Claim Agreement limited Driggs' liability to the subcontractor "to the amount, *if any*, Driggs recovers from the VDH&T on Subcontractor's behalf ..." (emphasis added).

▓ Count V contains debtor's allegation that Driggs agreed to be Chantilly's agent for the purpose of submitting and supporting Chantilly's claim before the VDH&T. Furthermore, because Driggs failed to pay a "fair and reasonable" sum to Chantilly, the debtor argues that Driggs has breached a fiduciary duty owed to Chantilly. In order for this allegation to have any substance, the Claim Agreement must have created a principal-agency relationship between the parties and Driggs must have had the duty to provide a "fair and reasonable" payment to Chantilly as that term is contemplated by the controlling agreement. Addressing these requisites in reverse order, this Court has determined that because the VDH&T allocated an amount in settlement of Chantilly's claim Driggs' lia-

bility to Chantilly is limited to the amount allocated by the VDH&T. Thus, one of the two necessary foundations for Count V is not present. The second foundation, the creation of a principal-agency relationship, appears as tenuous.

▓ A consideration of state law indicates that an agency is "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act." *Raney v. Barnes Lumber Corp.*, 195 Va. 956, 966, 81 S.E.2d 578 (1954). Additionally, one is legally presumed to be acting in his own interests rather than as an agent. *Brumley v. Grimstead*, 170 Va. 340, 358, 196 S.E. 668 (1938); *Montague Mfg. Co. v. Aycock-Holly Lumber Co.*, 139 Va. 742, 747, 124 S.E. 208 (1924). As a result, the burden in establishing the creation of an agency lies with the party alleging the existence of that agency. *Barnes v. Hampton*, 149 Va. 740, 743, 141 S.E. 836 (1928).

Chantilly presents no evidence whatsoever to support the establishment of a principal-agency relationship. The one case debtor cites to support its allegation, *H–B Ltd. Partnership v. Wimmer*, 220 Va. 176, 257 S.E.2d 770 (1979), featured an employment agreement and a classic constructive trust situation. In *Wimmer*, the plaintiffs were prospective purchasers and the defendant was a real estate agent hired by the plaintiffs to investigate the possibility of purchasing a specific real estate lot. *Id.* at 178, 257 S.E.2d 770. The realtor located the owner of the property, purchased and registered the property in his own name and attempted to assign the contract to the plaintiffs upon the payment of a sum nearly double the actual purchase price. The *Wimmer* court rightly determined that the defendant was an agent who had breached his fiduciary duty. A citation to the *Wimmer* case is not helpful to the Court in this instance.

▓ In the case at bar, there is no employer-employee relationship. Further-

more, Chantilly could not exercise control over Driggs' actions. A review of the Claim Agreement as a whole persuades this Court that the eight subcontractors and Driggs entered into a cooperative arrangement to present a united front and a consolidated claim to the VDH&T. The subcontractors were responsible for certain matters under the agreement, and Driggs was responsible for other matters. Certainly, one of Driggs' responsibilities was to negotiate on behalf of all of the parties. Unlike an agency situation, however, Driggs could use its own judgment to obtain the best recovery on the consolidated claim and was not subject to the control of any subcontractor as its principal. Thus, this Court must determine that Driggs is entitled to summary judgment on Count V as a matter of law.

In granting defendant's motion for summary judgment on the first five counts of debtor's complaint, this Court is not unmindful of the Fourth Circuit's long-standing position on cases decided by summary judgment. *See Phoenix Savings and Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967); *Pierce v. Ford Motor Co.* 190 F.2d 910, 915–16 (4th Cir. 1951). In the case *sub judice*, each party has presented facts by way of affidavits, sworn depositions and legal memoranda. Although each party focused on certain facts to support its position, a complete record has been provided by the parties through written and oral argument, and the facts presented were never contradictory nor even in dispute. A careful review of the record indicates there is no genuine issue of fact nor any "conflicting inferences deductible therefrom...." *Phoenix Savings and Loan, Inc. v. Aetna Cas. and Sur. Co.*, 381 F.2d at 249.

As a result of the foregoing, defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Rules of Bankruptcy Procedure is granted as to Counts I through V of the debtor's complaint.

Count VI of debtor's complaint will be dismissed by agreement of the parties.

An appropriate Order will enter.